## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| AMERICAN BOARD OF INTERNAL | : | CIVIL ACTION |
| MEDICINE | : | |
| | : | |
| vs. | : | NO. 10-CV-2680 |
| | : | |
| SARAH VON MULLER, M.D. | : | |
| | : | |
| vs. | : | |
| | : | |
| AMERICAN BOARD OF INTERNAL | : | |
| MEDICINE, CHRISTINE K. CASSEL, | : | |
| M.D., LYNN O. LANGDON, M.S., | : | |
| and ERIC S. HOLMBOE, M.D. | : | |


### MEMORANDUM AND ORDER


**JOYNER, J.**                                              **March 10, 2011**


This civil action has been brought before the Court on
Partial Motion of the Plaintiff/Counterclaim Defendant, American
Board of Internal Medicine, to Dismiss a number of the
counterclaims asserted against it by the Defendant/Counterclaim
Plaintiff, Sarah Von Muller, M.D.  As explained below, the
partial motion shall be granted in part and denied in part.

### Factual Background

This case is the last in a series of lawsuits initiated by
the American Board of Internal Medicine ("ABIM") against a
physician seeking injunctive and monetary relief for allegedly
unlawfully obtaining, copying and disseminating ABIM's copyright
and/or trade secret-protected Board Certification Examination

questions.[1]  In its Amended Complaint in this matter, Plaintiff contends that approximately one month before taking the November 2008 examination for board certification in gastroenterology, Defendant Sarah Von Muller purchased infringing ABIM gastroenterology exam questions from Arora Board Review for $480 plus her promise to provide actual test questions to Arora after she took the examination.  As was the case with the five prior ABIM examinations that she had taken, at both the beginning and the end of the November 2008 exam, Dr. Von Muller agreed to abide by ABIM's Policies and Procedures and its "Pledge of Honesty," thereby promising that she would not disclose, copy or reproduce any part of the material contained in the examination.  (Amended Complaint, ¶s 31-35).  Despite this pledge, some ten months after taking the examination, Dr. Von Muller purportedly sent some 77 questions that were "substantially similar" to the questions contained on the November, 2008 gastroenterology certification examination to Dr. Arora.  (Amended Complaint, ¶s 36-40).

In her Answer to the Plaintiff's Amended Complaint, Defendant substantively denied most of the allegations of wrongdoing against her and in further response, asserted some eleven counterclaims against Plaintiff.  By the motion now at issue, the Plaintiff/Counterclaim Defendant moves to dismiss

---

[1]  The other actions are American Board of Internal Medicine v. Mukherjee, No. 10-CV-2676, American Board of Internal Medicine v. Salehi, No. 10-CV-2677, American Board of Internal Medicine v. Todor, No. 10-CV-2678, and American Board of Internal Medicine v. Oni, No. 10-CV-2679.

Counts IV through XI for failure to state a claim upon which relief may be granted.

## Applicable Standards to Rule 12(b)(6) Motions to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a pleading must set forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007); Holmes v. Gates, 2010 U.S. App. LEXIS 25489 at *3 (3d Cir. Dec. 10, 2010). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Santiago v. Warminster Township, 629 F.3d 121, 126 (3d Cir. 2010). The law is clear that in considering and ruling upon motions to dismiss, the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Sheridan v. NGK Metals Corp., 609 F.3d 239, 262, n. 27 (3d Cir. 2010); Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002).

Finally, in addition to the complaint itself, the court can review documents attached to the complaint and matters of public record; a court may also take judicial notice of a prior judicial opinion. McTernan v. City of York, PA, 577 F.3d 521, 526 (3d

Cir. 2009); <u>Buck v. Hampton Township School District</u>, 452 F.3d

256, 260 (3d Cir. 2006).  In <u>Fowler v. UPMC Shadyside</u>, 578 F.3d

203, 210 (3d Cir. 2009), the Third Circuit examined <u>Iqbal</u>, and

made the following observation:

> When presented with a motion to dismiss, district courts
> should conduct a two part analysis.  First, the factual and
> legal elements of a claim should be separated.  The District
> Court must accept all of the complaint's well-pleaded facts
> as true, but may disregard any legal conclusions.  (citing
> <u>Iqbal</u>, 129 S. Ct. at 1949).  Second, a District Court must
> then determine whether the facts alleged in the complaint
> are sufficient to show that the plaintiff has a "plausible
> claim for relief."  (citing <u>Iqbal</u> 129 S. Ct. at 1950).  In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts...

### Discussion

*A.  Count IV - Failure to Afford Due Process*

Dr. Von Muller alleges in Count IV of her Counterclaim that

"ABIM Board Certification in Gastroenterology is a valuable

property right that she properly and painstakingly earned," that

"on or about June 8, 2010, ABIM suspended" her Board

Certification "without any prior notice," and that "Counterclaim

Defendants made no attempt prior to the suspension to provide

[her] with an opportunity to be heard or provide evidence."

(Counterclaim, ¶s 61-62).  "By reason of this suspension, Dr. Von

Muller was denied the privileges of Board Certification."

(Counterclaim, ¶ 63).

Although her counterclaim does not specifically reference

it, we surmise from the foregoing allegations that Counterclaim Plaintiff is invoking the Due Process Clause of the Fourteenth Amendment to support a claim that Defendant unlawfully deprived her of a property right without due process of law[2]. Because the Fourteenth Amendment, by its very terms, prohibits only state action, it historically has been applied to deliberate decisions of government officials to deprive a person of life, liberty or property. U.S. v. Morrison, 529 U.S. 598, 621, 120 S. Ct. 1740, 1756, 146 L. Ed. 2d 658 (2000); Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88. Ed. 2d 662 (1986). Stated otherwise, "[t]hat Amendment erects no shield against merely private conduct, however discriminatory or wrongful." Shelley v. Kraemer, 334 U.S. 1, 13, and n.12, 68 S. Ct. 836, 92 L. Ed. 1161 (1948). Thus, to be actionable, "the conduct allegedly causing the deprivation of a federal right must be fairly attributable to the state." Lugar v. Edmondson Oil Co., 457 U.S. 922, 939, 102 S. Ct. 2744, 2755, 73 L. Ed. 2d 482 (1982).

The state action determination is a "necessarily fact-bound inquiry." McKeesport Hospital v. Accreditation Council for Graduate Medical Education, 24 F.3d 519, 523 (3d Cir. 1994), quoting Lugar, supra. State action may be shown where (1) "the deprivation was caused by the exercise of some right or privilege

---

[2] Specifically, the Fourteenth Amendment Due Process clause provides: "nor shall any State deprive any person of life, liberty, or property without due process of law."

created by the State or by rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) "the party charged with the deprivation was a person who may fairly be said to be a state actor." <u>Metzger v. National Commission on Certification of Physician Assistants</u>, 2001 U.S. Dist. LEXIS 658 at *6 (E.D. Pa. Jan. 26, 2001), quoting <u>Lugar</u>, 457 U.S. at 937, 102 S. Ct. at 2754. To facilitate this assessment, the Supreme Court has articulated several different tests, *to wit*, the "public function" test, the "close nexus" test and the "symbiotic relationship" test. <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 801 (3d Cir. 2001). The most rigorous of the inquiries, the gravamen of the "public function" test is whether the government is effectively using the private entity in question to avoid a constitutional obligation or to engage in activities reserved to the government." <u>Id</u>., at 801, 802. The "close nexus" test, in turn, examines whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." <u>Leshko v. Servis</u>, 423 F.3d 337, 339 (3d Cir. 2005). Finally, the "symbiotic relationship" test examines the overall relationship between the parties to determine whether the state has "insinuated itself into a position of interdependence with the acting party" such that the state may be recognized as a joint participant in the challenged activity. <u>Metzger</u>, at *7, citing,

6

*inter alia*, <u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1977) and <u>Burton v. Wilmington Parking Authority</u>, 365 U.S. 715, 725, 81 S. Ct. 856, 862, 6 L. Ed. 2d 45 (1961).

Upon review of Count IV of Defendant's Counterclaim, we find no factual allegations that may support the conclusion that ABIM is a state actor, was fulfilling a state function, was in a symbiotic relationship or in such close nexus with a state actor that it may fairly be said to have been operating as the state itself in revoking Dr. Von Muller's gastroenterology certification.   For one, as is averred in the opening paragraphs of Defendant's Counterclaim, "Plaintiff ABIM is an Iowa non-profit corporation having corporate headquarters at 510 Walnut Street, Suite 1700, Philadelphia, Pennsylvania, 19106;" that "... counterclaim defendant Christine K. Cassel, M.D. is President and Chief Executive Officer for ABIM;" "...counterclaim defendant Lynn O. Langdon, M.S. is Senior Vice President and Chief Executive Officer for ABIM;" and "... counterclaim defendant Eric S. Holmboe, M.D. is Senior Vice President and Chief Medical Officer for ABIM, and has an office at 143 Church Street, Phoenixville, PA 19460."  (Counterclaim, ¶s 4, 6-8). Thus the counterclaim does not allege any facts that would suggest that ABIM is a state actor.

There are likewise no facts averred that would indicate that

ABIM was fulfilling a state function, standing in the state's shoes or in symbiotic relationship with a state when it revoked Dr. Von Muller's board certification.  Rather, the counterclaim asserts only that "ABIM's designation of 'Board Certified' confers many benefits on the doctors that earn this distinction," "[m]any hospitals require physicians of internal medicine to be Board Certified in order to have admitting privileges," "[m]any health plans also require ABIM's Board Certification," and "Board Certified physicians often receive higher levels of compensation than non-certified physicians practicing in the same specialties." (Counterclaim, ¶s 20-21).  Further, "[n]o other organization provides a comparable board certification to physicians in Internal Medicine and its subspecialties and therefore ABIM has a virtual monopoly on board certification of physicians in Internal Medicine and its subspecialties ..." (Counterclaim, ¶ 22).  However, the counterclaim also recognizes that: "... ABIM accreditation is not technically required for a doctor to be able to practice medicine..."  (Counterclaim, ¶24).

The Third Circuit and a number of our fellow district court judges in this circuit have observed that "the evaluation and accreditation of medical education in this country is neither a traditional nor an exclusive state function."  <u>Mckeesport</u>, 24 F.3d at 525; <u>Boggi v. Medical Review and Accrediting Council</u>, 2009 U.S. Dist. LEXIS 84032 at *22 (E.D. Pa. Sept. 15, 2009);

Metzger, 2001 U.S. Dist. at *8, *10; Gilliam v. National

Commission for Certification of Physician Assistants, Inc., 727

F. Supp. 1512, 1514 (E.D. Pa. 1989).  And, in Goussis v. Kimball,

813 F. Supp. 352 (E.D. Pa. 1993), our colleague Judge Robreno had

occasion to evaluate the very same issue now before this Court:

whether ABIM was a "state actor" or could be said to have been

engaging in "state action" when it determined that the plaintiff

in that case had failed to pass its sub-specialty certification

examination in the fields of endocrinology and metabolism.

Noting that certification in any specialty or sub-specialty was

not a prerequisite to the practice of medicine in either of the

states at issue and that the plaintiff had not demonstrated that

the challenged conduct impinged upon any powers that were

traditionally the exclusive prerogative of the State, Judge

Robreno reasoned:

> Because ABIM is a private, non-profit unregulated entity
> which receives no state funds and which has not been
> delegated by the state any role in the licensing or
> regulation of professional conduct, and whose role only
> involves the preparation, administration, and grading of a
> test which, *inter alia*, is used by peers to determine
> recognition of high professional achievement (board
> certification), it is not a state actor and its conduct does
> not constitute state action for purposes of imposing
> liability under section 1983.

Goussis, at 358.  Inasmuch as we cannot substantively distinguish

the pleading in this matter from the complaint in Goussis, we

find Judge Robreno's analysis highly persuasive.  We likewise

cannot find that ABIM is a state actor or that the conduct with

9

which it is here charged equates to state action for purposes of pleading a viable cause of action under the Fourteenth Amendment. Counterclaim IV is therefore dismissed with prejudice.

### B. Count V - Claims for Tortious Interference with Actual and Prospective Business Relationships

ABIM also moves to dismiss Count V of Defendant's counterclaim, which asserts a cause of action for tortious interference with actual and prospective business relationships.

In order to state a claim for tortious interference with a business relationship, a plaintiff must allege: (1) the existence of a contractual or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. Assembly Tech. Inc. v. Samsung Techwin Co., 695 F. Supp. 2d 168, 171 (E.D. Pa. 2010), citing CGB Occupational Therapy, Inc. v. RHA Health Services, Inc., 357 F.3d 375, 384 (3d Cir. 2004). Thus, a tortious interference claim does not accrue until, at least, the plaintiff suffers injury (*i.e.*, actual legal damage) as a result of the defendant's conduct. CGB, supra.

Moreover, the Pennsylvania courts have recognized the difficulty in defining a "prospective contractual relationship."

As the Pennsylvania Supreme Court has commented, "to a certain extent, the term has an evasive quality, eluding precise definition.  It is something less than a contractual right, something more than a mere hope."  Foster v. UPMC Southside Hospital, 2 A.3d 655, 665 (Pa. Super. 2010), quoting Phillips v. Selig, 959 A.2d 420, 428 (Pa. Super. 2008) and Thomson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466, 471 (1979).  As to the third element, the requirement that the plaintiff allege the absence of privilege or justification, the Pennsylvania courts have found that this requirement mandates that the plaintiff provide proof that the defendant's actions were improper. Foster, 2 A.3d at 666, citing Walnut Street Associates, Inc. v. Brokerage Concepts, Inc., 982 A.2d 94, 97-98 (Pa. Super. 2009).

Finally, tortious interference has also been held to be a "business-centered tort" that cannot be established by alleging interference with the relationship between a business and its government regulator and which covers only relations of pecuniary value: interference with employment relationships, buying or selling goods or services, or other potentially profitable relationships.  Interference with personal, social and political relations is not covered.  Pierre & Carlo, Inc. v. Premier Salons, Inc., 713 F. Supp. 2d 471, 486-487 (E.D.Pa. 2010), citing, inter alia, Restatement (Second) of Torts §766B cmt. c.

In this case, we find that the Defendant/Counterclaim

Plaintiff has alleged sufficient facts to plausibly state a cause of action for tortious interference with both existing and prospective business relationships. Indeed, Count V avers that many hospitals in Tulsa, Oklahoma, where Counterclaimant lives and practices, require board certification as a pre-requisite to having admitting privileges, that admitting privileges are required for a physician to be able to use hospital facilities for their patients and to receive patient referrals from the hospital and that she is affiliated with and has admitting privileges at two Tulsa-area hospitals - St. Francis Hospital South and SouthCrest Hospital. Counterclaimant further asserts that after having seen the initial "suspension" posting on the ABIM website, St. Francis Hospital South advised her that it was revoking her admitting privileges, and that since notice of the suspension was posted, her business has dramatically declined to the extent that her gross revenue was down some $229,000 for the June-September quarter of 2010 in comparison to the same period of 2009 . Finally, Dr. Von Muller charges that in interfering with her business relationships with SouthCrest and St. Francis Hospitals, other physicians, patients and/or prospective patients, ABIM, Drs. Cassel and Holmboe and Ms. Langdon acted maliciously and wantonly. Bearing in mind that Counterclaim Defendants are free to renew their challenge to Count V following the close of discovery, we reiterate our conclusion that Dr. Von

Muller has plausibly pled a tortious interference claim against the movants here.  The motion to dismiss shall therefore be denied as to Count V.

   *C.   Count VI – Commercial Disparagement*

   A commercial disparagement action is meant to compensate a vendor for pecuniary loss suffered because statements attacking the quality of its goods have reduced their marketability.  <u>Knit With v. Knitting Fever, Inc.</u>, 2010 U.S. Dist. LEXIS 102709, *20-*21 (E.D. Pa. Sept. 28, 2010); <u>Synygy v. Scott-Levin, Inc.</u>, 51 F. Supp. 2d 570, 579 (E.D. Pa. 1999).  The Third Circuit has distinguished between defamation and commercial disparagement claims, noting that a claim for defamation lies where the defamatory statement "imputes to the corporation fraud, deceit, dishonesty, or reprehensible conduct" while a claim for commercial disparagement lies where "the publication on its face is directed against the goods or products of a corporate vendor." <u>Knit With</u>, <u>supra</u>, (quoting <u>U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia</u>, 898 F.2d 914, 924 (3d Cir. 1988)).  In Pennsylvania, a claim for commercial disparagement requires proof that: (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; (4) the publisher either knows the published statement is false or acts in reckless

13

disregard of its truth or falsity.  <u>McNulty v. Citadel</u>

<u>Broadcasting Company</u>, 58 Fed. Appx. 556, 566, 2003 U.S. App.

LEXIS 3625, *25 (3d Cir. Feb. 26, 2003); <u>Neurotron, Inc. v.</u>

<u>Medical Service Ass'n. Of Pennsylvania</u>, 254 F.3d 444, 448-449 (3d

Cir. 2001); <u>Pro Golf Manufacturing, Inc. v. Tribune Review</u>

<u>Newspaper Co.</u>, 570 Pa. 242, 246, 809 A.2d 243, 246 (Pa. 2002).

As to the third element, "Pennsylvania law requires that a

plaintiff claiming commercial disparagement plead damages with

considerable specificity" by setting out in its complaint the

names of the customers lost and financial loss resulting from the

tort.  This requirement is relaxed where the disparagement

claimed rises to the level of defamation *per se,* through

publication which "imputes to another conduct, characteristics,

or a condition that would adversely affect her in her lawful

business or trade."  <u>Bro-Tech Corp. v. Thermax, Inc.</u>, 651 F.

Supp. 2d 378, 416 (E.D. Pa. 2009), quoting <u>Swift Bros. v. Swift &</u>

<u>Sons, Inc.</u>, 921 F. Supp. 267, 276 (E.D.Pa. 1995) and <u>Walker v.</u>

<u>Grand Central Sanitation</u>, 430 Pa. Super. 236,  245, 634 A. 2d

237, 241 (1993).   Instead, a defamation *per se* plaintiff need

only prove "general damages," *i.e.*, "proof that one's reputation

was actually affected by the slander, or that she suffered

personal humiliation or both."  <u>Franklin Prescriptions, Inc. v.</u>

<u>New York Times Co.</u>, 424 F.3d 336, 343 (3d Cir. 2005), quoting

<u>Walker</u>, 634 A.2d at 242.

In this case, Counterclaimant charges in Count VI that the counterclaim defendants made false statements of fact or incorrect statements of opinion about her knowing that those statements or opinion would cause pecuniary harm, that the counterclaim defendants did so maliciously and wantonly and that as a result, she has suffered financial harm to her medical practice including at least $229,000 in lost revenue. It appears from the general factual allegations contained in paragraphs 27 - 37 of the counterclaim that the false statements of fact or incorrect statements of opinion to which Dr. Von Muller is referring are those that were made to the Wall Street Journal that Dr. Von Muller and a number of other doctors had cheated on their certification examinations and that their certifications had been suspended.

It is further averred that ABIM and the individual counterclaim defendants suspended Dr. Von Muller's certification without first affording her any opportunity to present evidence in defense or to appeal the suspension and that the counterclaim defendants then proceeded to publicize the suspension by notating it on the ABIM website, contacting the Wall Street Journal and then emailing copies of the Wall Street Journal article to "many, if not all, of the residency programs in the U.S." (Counterclaim, ¶32). In apparent recognition of the fact that ABIM's bylaws, policies and procedures preclude ABIM from

suspending physicians until they have been afforded due process, which includes a three-level appeal process, the counterclaim also alleges that the defendants have since "back-pedaled and changed Dr. Von Muller and other doctors' status from 'suspended' to 'suspension recommended/appeal pending.'" (Counterclaim, ¶s 33, 38). "The Counterclaim Defendants knew their actions to suspend Dr. Von Muller and then publicize the suspension through the Internet and the Wall Street Journal would have a devastating effect on Dr. Von Muller's career and medical practice and on the careers and medical practices of other doctors." (Counterclaim, ¶ 36). In now viewing all of these alleged facts together and accepting them as true for purposes of ascertaining whether they lead to the reasonable inference that the counterclaim defendants may be liable for the alleged misconduct, we find that Dr. Von Muller's commercial disparagement claim is sufficiently plausible to withstand this motion to dismiss. Certainly, the statement that a doctor has cheated on a certification examination and has therefore had her board certification revoked "imputes to" that doctor "conduct, characteristics, or a condition that would adversely affect her in her lawful business or trade," and arguably equates to defamation *per se.* Accordingly, the need to plead the specifics regarding pecuniary loss is obviated and the Counterclaim Defendants' motion shall likewise be denied as to Count VI of the counterclaim.

*D. Defamation - Count VII*

The ABIM defendants also seek the dismissal of Count VII of the counterclaim alleging defamation. Given the similarity which defamation bears to commercial disparagement, it should not be surprising that we find that this count, too, has been adequately pled.

Courts have long recognized that the purpose underlying defamation law is to compensate an individual for pecuniary harm to one's reputation inflicted by a defamatory statement. <u>Mzmane v. Winfrey</u>, 693 F. Supp. 2d 442, 471 (E.D. Pa. 2010)(citing <u>Wilson v. Slatalla</u>, 970 F. Supp. 405, 414 (E.D. Pa. 1997). Pennsylvania has codified the elements required for a plaintiff to plead and prove a defamation claim at 42 Pa. C. S. §8343(a). Those elements are:

> (1) The defamatory character of the communication.
>
> (2) Its publication by the defendant.
>
> (3) Its application to the plaintiff.
>
> (4) The understanding by the recipient of its defamatory meaning.
>
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
>
> (6) Special harm to the plaintiff from its publication.
>
> (7) Abuse of a conditionally privileged occasion.

A statement is defamatory if it "tends so to harm the reputation of another as to lower him or her in the estimation of

the community or to deter third persons from associating or dealing with him or her," or if it "ascribes to another conduct, character or condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession." Giordano v. Claudio, 714 F. Supp. 2d 508, 526 (E.D. Pa. 2010)(citing Maier v. Maretti, 448 Pa. Super. 276, 671 A.2d 701, 704 (1995)); Cornell Companies, Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 271 (E.D. Pa. 2007) (quoting U.S. Healthcare, 898 F.2d at 923). It is for the court to determine whether the statement at issue is defamatory by examining, *inter alia*, the effect that the statement is calculated to produce and the "impression it would naturally engender in the minds of the average persons among whom it is intended to circulate." See, Giordano and Cornell, both supra; Rockwell v. Allegheny County Health, Education & Research Foundation, 19 F. Supp. 2d 401, 405 (E.D. Pa. 1998)(quoting Gutman v. Tico Insurance Co., Civ. A. No. 97-5694, 1998 U.S. Dist. LEXIS 8438 (E.D. Pa. June 9, 1998).

Again, the gravamen of Counterclaim Plaintiff's defamation claim is the Counterclaim Defendants' alleged malicious and wanton publication of statements to the general public and most, if not all, of the residency programs in the U.S., that Counterclaimant had cheated on her gastroenterology certification examination and that her Board Certification as an internist and gastroenterologist had been revoked. Publication was made via

the ABIM website, the press release to and subsequent article in, the Wall Street Journal, and through the filing of the complaint in this matter, all of which identified the counterclaimant by name. (See, e.g., Exhibits A, B and C to Defendant's Counterclaim). Counterclaim plaintiff contends that these statements are false and that as a result of their dissemination, one of the hospitals with which she is affiliated has advised her that it is revoking her admitting privileges. It is further alleged that Counterclaimant has suffered lost revenue of at least $229,000.

We believe that accusing anyone of cheating on an examination is indeed a very serious charge which would unquestionably harm the reputation of and lower the accused individual in the eyes of his community and would likely deter third persons from associating or dealing with him or her. Furthermore, given that the accused here is a physician to whom her patients entrust their health and well-being, the cheating accusation and the subsequent announcement that her board certification had been revoked clearly ascribes to Dr. Von Muller conduct, character and/or condition that would likely have an adverse effect on her fitness to perform her chosen profession. Insofar as we must, for purposes of this motion to dismiss, accept the counterclaim's allegations as true, we find that they are more than sufficient to state a defamation claim upon which

relief may plausibly be granted.  Accordingly, the ABIM defendants' motion for dismissal of Count VII is also denied.

   *E.  Count VIII - False Light*

   In Count VIII of her counterclaim, Dr. Von Muller ostensibly raises a cause of action against all of the ABIM defendants for false light.

   The tort of false light/invasion of privacy involves "publicity that unreasonably places the other in a false light before the public." Ciolli v. Iravani, 651 F. Supp. 2d 356, 376 (E.D. Pa. 2009)(quoting Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648, 652 (Pa. Super. 1999).  A cause of action for false light invasion of privacy will be found where a "major misrepresentation of a person's character, history, activities or beliefs is made that could reasonably be expected to cause a reasonable man to take serious offense." Keim v. County of Bucks, 275 F. Supp. 2d 628, 637 (E.D. Pa. 2003)(quoting Rush, 732 A.2d at 654).  In order to establish a cause of action for false light, it must be shown that: (1) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (2) the defendant had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. Mzmane, 693 F. Supp. 2d at 510; Lin v. Rohm and Haas Co., 293 F. Supp. 2d 505, 521-22 (E.D. Pa. 2003).  Hence, negligence may not support a

claim of false light.  <u>Ciolli</u>, <u>supra</u>.

In application of the foregoing and again accepting as true the counterclaims's allegations that the statements maliciously or wantonly made and published by the ABIM parties are false and misleading, we believe that a reasonable person would find allegations that she cheated on a board certification examination and was therefore not appropriately board certified to be highly offensive.  As a consequence, we also deny the motion for dismissal as to Count VIII of Defendant's counterclaim.

*F.  Unfair Competition Claims - Counts IX and X*

Count IX of the counterclaim is entitled "Unfair Competition and False Advertising under the Lanham Act," while Count X is said to fall under "Common Law Unfair Competition."  In both counts, Dr. Von Muller claims that the counterclaim defendants' actions (in charging her and various other physicians with cheating, in suspending their board certifications and in publicizing those suspensions) were intentional and for the purpose of procuring an unfair competitive advantage for both itself and for those physicians whose board certifications were not suspended.

The common law cause of action for unfair competition mirrors the Lanham Act's section 43(a)[3] cause of action for

---

[3]  Specifically, this section of the Lanham Act provides, in relevant part:

unfair competition except that under state law there is no requirement that goods traveled through interstate commerce. Louis Vuitton Malletier and Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 582 (E.D. Pa. 2002)(citing Haymond v. Lundy, Civ. A. No. 99-5048, 2001 U.S. Dist. LEXIS 54, 2001 WL 15956 at *2 (E.D. Pa. Jan. 5, 2001) and Gideons International, Inc. v. Gideon 300 Ministries, Inc., 94 F. Supp. 2d 580 (E.D. Pa. 1999). The elements of a Lanham Act claim for false advertising are: (1) that the defendant has made false or misleading statements as to his own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the

---

**(a) Civil action**

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, of any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -
>
>> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. §1125(a). Hence, most claims under the Lanham Act fall into two broad categories, claims of false designation of origin and false advertising. Swift Brothers v. Swift & Sons, 921 F. Supp. 267, 275 (E.D. Pa. 1995).

advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, etc.  GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp., 197 Fed. Appx. 120, 123, 2006 U.S. App. LEXIS 16377, *7 (E.D.Pa. June 29, 2006),(citing Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 874 (3d Cir. 1992)).

While Pennsylvania common law has traditionally defined unfair competition as the "passing off" of a rival's goods as one's own, creating confusion between one's own goods and the goods of one's rival, the doctrine of unfair competition in Pennsylvania is not restricted to passing off.  Giordano v. Claudio, 714 F. Supp. 2d 508, 521 (E.D. Pa. 2010) (citing Scanvec Amiavle Ltd. v. Chang, 80 Fed. Appx. 171, 180 (3d Cir. 2003), Granite State Ins. Co. v. Aamco Transmissions, Inc., 57 F.3d 316, 319 (3d Cir. 1995) and Carl Colteryahn Dairy, Inc. v. Schneider Dairy, 415 Pa. 276, 203 A.2d 469, 473 (1964).  Recently, more and more District Courts have recognized that the Pennsylvania common law tort definition of unfair competition is coextensive with that set out in the Restatement (Third) of Unfair Competition §1 (1995).  Id.; Bro-Tech Corp. v. Thermax, Inc., 651 F. Supp. 2d 378, 417 (E.D. Pa. 2009); Building Materials Cor. Of America v. Rotter, 535 F. Supp. 2d 518, 526, n.4 (E.D. Pa. 2008).  Under the Restatement,

One who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other for such harm unless:

(a) the harm results from acts or practices of the actor actionable by the other under the rules of this Restatement relating to:

(1) deceptive marketing, as specified in Chapter Two;

(2) infringement of trademarks and other indicia of identification, as specified in Chapter Three;

(3) appropriation of intangible trade values including trade secrets and the right of publicity, as specified in Chapter Four;

or from other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public; or

(b) the acts or practices of the actor are actionable by the other under federal or state statutes, international agreements, or general principles of common law apart from those considered in this Restatement.

As noted in Comment G, "[a]s a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition."  Thus, "Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information."  Claudio, supra; (quoting Synthes (U.S.A.) v. Globus Med., Inc.,,

24

Civ. A. No. 04-1235, 2005 U.S. Dist. LEXIS 19962 at *8 (E.D. Pa. Sept. 14, 2005). <u>See also</u>, <u>Delaware Valley Financial Group v. Principal Life Ins. Co.</u>, 640 F. Supp. 2d 603, 621 (E.D. Pa. 2009)("claim of unfair competition encompasses trademark infringement but also includes a broader range of unfair practices, which may generally be described as misappropriation of skill, expenditures and labor of another.")

Turning to Counts IX and X[4], we simply cannot square the facts alleged with an unfair competition claim under either Pennsylvania common law or the Lanham Act. Again, the gravamen of the counterclaimant's complaint is the accusation that she cheated on her gastroenterology boards and the dissemination of ABIM's decision to suspend her board certification. For one, the truth or falsity of the cheating accusation remains to be seen as does the question of whether the decision to suspend will be upheld on appeal. And, even if the accusation were to be shown to ring true, it does not implicate Dr. Von Muller's product or service - at worst, the accusation is only against her personal character and status (*i.e.* whether or not she is in fact "Board Certified" in gastroenterology).

However, even more fatal, is the fact that Counterclaim

---

[4] Additionally, Count X, which purports to plead a claim under common law, also seems to be improperly titled. Rather than alleging the elements of unfair competition, it appears to be averring the elements necessary to state a claim for injunctive relief.

Defendants are not themselves in competition with Counterclaim Plaintiff.  Indeed, both the Third Circuit and the District Courts have concluded that in order to state a claim for unfair competition, a plaintiff must allege that it is in competition with the defendant – that is, that the plaintiff and the defendant "supply similar goods or services." Claudio, 714 F. Supp. 2d at 523 (quoting Granite State  v. Aamco, 57 F. 3d at 319-320; Nevyas v. Morgan, 309 F. Supp. 2d 673, 679-680 (E. D. Pa. 2004).  Here there are no facts alleged that would suggest that this is the case.  For these reasons, we shall grant the motion to dismiss Counts IX and X of the Defendant's Counterclaim.

*G.  Civil Conspiracy – Count XI*

Finally, Count XI of Defendant's Counterclaim, asserts a state law cause of action for civil conspiracy which, not surprisingly, Counterclaim Defendants here move to dismiss.

In order to state a civil action for civil conspiracy, a complaint must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. Claudio, 714 F. Supp. 2d at 534; Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super. 2004).  A claim for civil conspiracy cannot be pled without also alleging

an underlying tort.  McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005).  "Once an underlying tort has been alleged, only a finding that the underling tort has occurred will support a claim for civil conspiracy."  Alpart v. General Land Partners, Inc., 574 F. Supp. 2d 491, 506 (E.D. Pa. 2008)(quoting Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000)); Wolk v. Teledyne Industries, Inc., 475 F. Supp. 2d 491, 506 (E.D. Pa. 2007).  Proof of malice is also an essential part of a cause of action for conspiracy.  Goldstein, supra, (citing Burnside v. Abbott Laboratories, 351 Pa. Super. 264, 505 A.2d 973, 980 (1985).  "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy."  Id., quoting Id.  What's more, a showing that an alleged conspirator acted for professional or business benefit will preclude a finding of malice.  Claudio, 714 F. Supp. 2d at 534.

Instantly, Counterclaimant avers only in Count XI that "[a]s described herein, Counterclaim Defendants engaged in a conspiracy to intentionally bring harm to Dr. Von Muller and took steps in furtherance of this conspiracy," and that "Dr. Von Muller has been damaged as a direct and proximate result of this conspiracy."  (Counterclaim, ¶s 99-100).  To this, Counterclaim Defendants rejoin that "ABIM cannot conspire with its employees and that Count XI fails to allege malice.  Under the "intra-

corporate conspiracy doctrine," a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation.  Whaumbush v. City of Philadelphia, Civ. A. No. 09-6066, 2010 U.S. Dist. LEXIS 109873, *35 (E.D. Pa. Oct. 14, 2010).  The doctrine does not apply "if the officer is acting in a personal, as opposed to official, capacity."  General Refractories v. Fireman's Fund Insurance Co., 337 F.3d 297, 313 (3d Cir. 2003), quoting Heffernan v. Hunter, 189 F.3d 405, 413 (3d Cir. 1999).  That is, an exception exists "when the employees have acted for their sole personal benefit and thus outside the course and scope of their employment." Heffernan, at 412.

It appears from our reading of Count XI in conjunction with the preceding paragraphs of the Counterclaim that the civil conspiracy with which the defendants are charged is indeed an intra-corporate one.  As the opening paragraphs aver, Counterclaim Defendant Cassel is the President and Chief Executive Officer for ABIM, Defendant Langdon is a Senior Vice President and the Chief Information Officer, while Defendant Holmboe is a Senior Vice President and ABIM's Chief Medical Officer.  Although paragraph 34 alleges that "on information and belief," the individual defendants "have acted outside the scope of their employment" and "based on personal motives," there are no facts pled as to what the scope of their authority was, how

their actions exceeded that authority or what their personal motives were.  Given that it is conceivable, however, that Counterclaimant could state a viable cause of action for civil conspiracy if given the opportunity to file an amended pleading, we shall dismiss Count XI with leave to re-plead.

For all of the foregoing reasons, the motion to dismiss Defendant's Counterclaims is granted in part and denied in part in accordance with the attached order.