**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN BOARD OF INTERNAL MEDICINE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 10-CV-2680-JCJ |
| | : | |
| SARAH VON MULLER, M.D. | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN BOARD OF INTERNAL MEDICINE, CHRISTINE K. CASSEL, M.D., LYNN O. LANGDON, M.S., AND ERIC S. HOLMBOE, M.D. | : | |

## ORDER

AND NOW this_____ day of _____, 2012, upon consideration of Defendant

Counterclaim Plaintiff's Renewed Motion for Judgment as a Matter of Law and any response, it

is hereby ORDERED that the Motion is GRANTED.  The Entry of Judgment is Hereby

VACATED and Judgment is entered in Dr. Von Muller's favor.


BY THE COURT


_____
                                                    J

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN BOARD OF INTERNAL MEDICINE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 10-CV-2680-JCJ |
| | : | |
| SARAH VON MULLER, M.D. | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN BOARD OF INTERNAL MEDICINE, CHRISTINE K. CASSEL, M.D., LYNN O. LANGDON, M.S., AND ERIC S. HOLMBOE, M.D. | : | |

## ALTERNATIVE ORDER

AND NOW this_____ day of _____, 2012, upon consideration of Defendant

Counterclaim Plaintiff's Motion for a New Trial and any response, it is hereby ORDERED that

the Motion is GRANTED.

BY THE COURT

_____
                                                        J

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN BOARD OF INTERNAL MEDICINE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 10-CV-2680-JCJ |
| | : | |
| SARAH VON MULLER, M.D. | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN BOARD OF INTERNAL MEDICINE, CHRISTINE K. CASSEL, M.D., LYNN O. LANGDON, M.S., AND ERIC S. HOLMBOE, M.D. | : | |

## DEFENDANT COUNTERCLAIM PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION IN THE ALTERNATIVE FOR A NEW TRIAL

Defendant, Counterclaim Plaintiff Dr. Sarah Von Muller hereby renews her March 1,

2012 Motion for Judgment as a Matter of Law (Dkt. No. 129). In addition, Dr. Von Muller

respectfully moves for a new trial based on several errors of law committed during trial.

A Memorandum of Law accompanies this Motion and is incorporated here by reference.

Respectfully submitted,

By: /s/ Aaron J. Freiwald, Esquire
AARON J. FREIWALD, ESQUIRE
GLENN A. ELLIS, ESQUIRE
KATHERINE M. ROBINSON, ESQUIRE
Counsel for Defendant/Counterclaim
Plaintiff, Sarah Von Muller, M.D.
LAYSER & FREIWALD, P.C.

Date: April 4, 2012

2

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN BOARD OF INTERNAL MEDICINE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 10-CV-2680-JCJ |
| | : | |
| SARAH VON MULLER, M.D. | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN BOARD OF INTERNAL MEDICINE, CHRISTINE K. CASSEL, M.D., LYNN O. LANGDON, M.S., AND ERIC S. HOLMBOE, M.D. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT COUNTERCLAIM PLAINTIFF'S RENEWED MOTION FOR**
**JUDGMENT AS A MATTER OF LAW AND**
**MOTION, IN THE ALTERNATIVE, FOR A NEW TRIAL**

Pursuant to Federal Rule of Civil Procedure 50, Defendant Counterclaim Plaintiff Dr.

Sarah Von Muller ("Dr. Von Muller") hereby respectfully requests that the Court grant her

Renewed Motion for Judgment as a Matter of Law pursuant to Rule 50(b) of the Federal Rules of

Civil Procedure, or in the alternative, grant her Motion for a new trial pursuant to Rule 59(a) of

the Federal Rules of Civil Procedure.

**I.      STANDARD OF REVIEW**

Rule 50(b) of the Federal Rules of Civil Procedure provides that if a party files a Motion

for Judgment as a matter of law under Rule 50(a), the moving party may file a renewed motion

for judgment as a matter of law and may include an alterative or joint request for a new trial

under rule 59.  Fed. R. Civ. P. 50(b).

3

Judgment as a matter of law should be granted if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir.1992), *cert. denied*, 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993).

> Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party. Thus, although the court draws all reasonable and logical inferences in the nonmovant's favor, we must affirm an order granting judgment as a matter of law if, upon review of the record, it is apparent that the verdict is not supported by legally sufficient evidence.

*Lightning Lube, Inc.*, 4 F.3d 1153, 1167 (internal citations and quotations omitted).

In the alternative,

> Federal Rule of Civil Procedure 59 provides in pertinent part: A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

*Hayes v. Cha*, 338 F. Supp. 2d 470, 491-92 (D.N.J. 2004).

This standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law. *Price v. Delaware Dept. of Correction*, 40 F. Supp. 2d 544, 550 (D. Del. 1999).

4

"A new trial may be granted when the verdict is contrary to the great weight of the evidence; that is where a miscarriage of justice would result if the verdict were to standard or when the court believes the verdict results from jury confusion." *Brown v. Nutrition Mgmt. Services Co.*, 370 F. App'x 267, 269-70 (3d Cir. 2010) (internal citations and quotations omitted).

In addition, "[f]ederal district courts recognize that (1) prejudicial error of law. . . may be grounds for the district court's ordering a new trial." *Maylie v. nat'l R.R. Passenger Corp.*, 791 F.Supp. 477, 480 *aff'd*, 983 F.2d 1051 (3d Cir. 1992). "When the district court commits a prejudicial error of law, it has wide discretion in deciding a motion for a new trial." *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 61 F. Supp. 2d 133 (D. Del. 1999). "The district court has this discretion because rulings of law initially rest with the district court judge, so ordering a new trial because a ruling of law may have prejudiced the losing party does not usurp the jury's role as fact finder." *Id.*

## II.    RELEVANT FACTUAL BACKGROUND

In this case, ABIM alleged that approximately one month before taking the American Board of Internal Medicine (ABIM)'s gastroenterology examination, Defendant Dr. Sarah Von Muller knowingly purchased questions from previous ABIM examinations from Dr. Rajender Arora. *See* Amended Complaint, Dkt. No. 10 at p. 9.

In addition, ABIM alleged that Dr. Von Muller then took her board certification exam in gastroenterology and sent back questions copied from her exam to Dr. Arora. *Id.* The main evidentiary basis for these allegations was a chain of hearsay emails between Dr. Von Muller and Dr. Arora. *Id.* Dr. Arora was not called to testify at trial.

5

Based on these facts, ABIM brought claims for Copyright Infringement, Breach of

Contract, and Misappropriation of Trade Secrets. This matter was tried before a jury of eight

from April 23, 2012 until March 7, 2012. *See* Entry of Judgment, attached as Exhibit A.

Judgment was entered against Dr. Von Muller in the amount of $91,114.00.[1]  *Id.*

Dr. Von Muller hereby renews her Motion for Judgment as a Matter of Law and

respectfully requests a new trial as follows:

**A.      Background Relevant to Renewed Motion for Judgment as a Matter of Law**

On March 1, 2012, Dr. Von Muller filed a Motion for Judgment as a Matter of Law as to

all of ABIM's claims. Dkt. No. 129. The Motion was denied, without argument, on March 1,

2012. Dkt. No. 131.

Dr. Von Muller hereby renews her Motion for Judgment as a Matter of Law pursuant to

Rule 59(b).[2]  The following facts are relevant to Dr. Von Muller's renewed Motion:

On September 28, 2010, ABIM filed an Amended Complaint, which averred, in part:

As to its claim for copyright infringement,

43.     The Gastroenterology Examination is an original work
copyrightable under 17 U.S.C. § 102. As lawful owner of the copyrights, ABIM is
entitled to, *inter alia*, the exclusive rights to do and to authorize the reproduction,
distribution, display of and the preparation of derivative works based on the
copyrighted work. 17 U.S.C. § 106.

44.     Defendant's unauthorized copying and distribution of and creation

---

[1]Dr. Von Muller also filed a post-trial Motion to mold the verdict because the jury granted
her affirmative defense to ABIM's claim of copyright infringement. *See* Dkt. No. 137.

[2]In her original Motion, Dr. Von Muller included a request for Judgment as a Matter of
Law with respect to ABIM's Misappropriation of Trade Secrets claim. Defendant's argument as
to the misappropriation claim is now moot because the Jury denied ABIM's claim finding that
the exam questions at issue did not actually constitute a trade secret.

of derivative works based on the Gastroenterology Examination in interstate commerce constitutes an actual infringement of ABIM's copyrights.

      45.    The foregoing conduct on the part of Defendant constitutes willful copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 et seq.

      46.    By reason of the foregoing acts of copyright infringement, ABIM has sustained and, if Defendant is not enjoined, will continue to sustain substantial damages.

*See* Amended Complaint, Docket No. 10.  As to its breach of contract claim, the Amended

Complaint stated,

      57.    Each and every candidate for Board Certification in Gastroenterology, including Defendant Von Muller, enters a permanent confidentiality agreement with ABIM before taking the Gastroenterology Examination that imposes upon the Candidate a continuing duty to keep the contents of the Gastroenterology Examination a secret.

      58.    Knowing her duty of confidentiality to ABIM, Von Muller copied, reproduced, distributed, published and/or displayed secure and confidential ABIM Gastroenterology Examination items, or derivations thereof, without permission or authorization from ABIM.

      59.    Von Muller breached her duty to ABIM under the confidentiality agreements not to disclose, copy or distribute secure Gastroenterology Examination content.

*Id.*

ABIM based its copyright infringement and breach of contract claims on the <u>exact same</u>

<u>alleged unlawful conduct</u>.  Namely allegations that Dr. Von Muller copied questions from her

September, 2008 Board Examination and shared them with Dr. Arora in violation of a

confidentiality agreement.  In the Amended Complaint, the only facts ABIM put forth in support

of its claims, paragraphs 44 and 45 (copyright infringement) paragraphs 57 and 58 (breach of

contract), are virtually identical.

At the trial of this case, ABIM failed to offer any evidence to differentiate the facts and circumstances that underlie any of its claims.

In addition, the evidence offered as to damages was the same for both claims. ABIM based its "damages" exclusively on the claim that Dr. Von Muller is somehow liable for the "cost" to ABIM to refill its examination question pool. Significantly, ABIM put forward no evidence of any actual damages. ABIM's Chief Financial Officer Vincent J. Mandes testified that ABIM has not incurred any actual costs as a result of Dr. Von Muller's alleged misconduct at any time. Any testimony as to future or un-calculated damages was clearly speculative.

Specifically, Mr. Mandes testified:

(1)     That the activity of writing new test questions, i.e. incurring actual costs, has not happened yet. N.T. 2/29/12 at pp. 93-94;

(2)     That ABIM had not hired any extra employees or paid any overtime as a result of Dr. Von Muller's alleged copying. *Id.* at p. 148;

(3)     That ABIM has been operating as "business as usual" and under "normal operating procedure." *Id.*;

(4)     As to actual costs incurred as part of usual business operating expenses he had no idea if the staff was working on anything as to Dr. Von Muller. *Id.*;

(5)     That there are no staff costs directly attributable to Dr. Von Muller. *Id.*;

(6)     Conceded that he did nothing to establish whether the costs he was putting forth are related to replacement of test questions. *Id.* at p. 93;

(7)     Conceded that the overhead costs included in his assessment were not directly related to Dr. Von Muller. *Id.*;

8

(8)     Acknowledged that revenues from test administration have been flat or have increased since the incident. *Id.* at p. 130;

(9)     Of P56, his report, he testified: this is an analysis of what it might cost if ABIM replaces questions. No actual cost has been incurred . *Id.* at pp. 93-94; and

(10)    That he was not sure if ABIM spent any money in 2010 to replace compromised questions and acknowledged he had no evidence of any such costs in 2011 and 2012. *Id.*

Moreover, at the trial of this matter, ABIM put forth no additional evidence or facts in support of any of its claims. Significantly, ABIM did not put forth evidence that:

(1)     The exam questions at issue derive independent economic value;

(2)     The information contained in the exam questions at issue could not be independently ascertained;

(3)     ABIM's breach of contract claim relied on <u>any</u> facts independent to the facts which comprise its copyright infringement claim; or

(4)     ABIM suffered <u>any</u> alleged damage from its breach of contract claim not duplicative of damages claimed in its copyright infringement claim.

For the reasons set forth in greater detail below, based on these facts and the record at trial, the Court should have granted Dr. Von Muller's Motion for Judgment as a Matter of Law. Accordingly, Dr. Von Muller respectfully requests that the Court now grant her renewed Motion.

## B.     Background Relevant to Motion for a New Trial

During the trial of this matter, the Court committed several errors of law that caused such extreme prejudice to Dr. Von Muller that a new trial is warranted. These errors of law are discussed more extensively in §III(C). The errors of law are as follows:

9

(1)     There is strong evidence of jury confusion demonstrated by the fact that the jury found in Dr. Von Muller's favor as to the copyright claim yet still awarded damages. Accordingly, a new trial is warranted;

(2)     The Court committed error by not precluding testimony from Dr. David Katzka and then by not allowing Dr. Von Muller to *voir dire* Dr. Katzka;

(3)     The Court committed error by allowing in prejudicial hearsay evidence;

(4)     The Court committed error by not granting Dr. Von Muller's Motion to Compel as to the Arora settlement;

(5)     The Court had a prejudicial attitude towards Dr. Von Muller and her counsel;

(6)     The Court committed error by precluding Dr. Von Muller's damages evidence; and

(7)     The Court committed error by granting Judgment as a Matter of Law as to Dr. Von Muller's tortious interference with contractual relations claim.

## III.    ARGUMENT

### A.    Renewed Motion to Strike the Testimony of Mr. Mandes and Judgment as a Matter of Law based on Lack of Damages Evidence

Dr. Von Muller moved to strike Mr. Mandes' testimony during the trial. *See* Dkt. No. 129.  The Court denied Plaintiff's Motion on March 1, 2012.  Dkt. No. 131.  Mr. Mandes' testimony, summarized in part above, should have been stricken, as a matter of law, because a jury cannot be allowed to speculate based on testimony about what future losses may or may not be incurred.  There was no testimony at trial that ABIM had incurred any real losses.  Mr. Mandes testified repeatedly that his assessment of ABIM damages, summarized in Exhibit P56, was limited to an estimate of costs ABIM <u>might</u> incur in the future.  Under cross-examination,

10

Mr. Mandes conceded, again repeatedly, that he could not state that any of his calculations, based on calculations of 2010 costs incurred in the normal course of ABIM's business, would actually match costs that ABIM might – but might not – incur in the future.

Mr. Mandes testimony was so highly speculative that it was not, as a matter of law, sufficient to satisfy Plaintiff ABIM's *prima facie* burden as to its claims.

In *Kearns v. Clark*, 343 Pa. Super. 30, 43, 493 A.2d 1358, 1364 (1985), the Pennsylvania Superior court found the trial court committed legal error by allowing the jury to determine future medical expenses. The Superior Court wrote, "[A] jury will not be permitted to speculate about future medical expenses when there is no evidence that future expenses will be incurred." *Id.* Similarly, here, the jury should not have been allowed to speculate about expenses which may or may not occur in the future. Given Mr. Mandes' testimony above, the jury could not do anything but speculate about future costs which may or may not come to fruition. Therefore, Mr. Mandes' testimony should have been stricken because he has put forth no evidence of ABIM's actual damages and his testimony as a whole was improperly speculative. As discussed below, without evidence of actual damages, all of ABIM's claims fail as a matter of law.

**B.      Renewed Motion for Judgment as a Matter of Law as to All Claims**

Dr. Von Muller also moved for judgment as a matter of law as to all of ABIM's claims during trial. *See* Dkt. No. 129. The Court denied this Motion on March 1, 2012. Dr. Von Muller hereby renews her Motion for Judgment as a Matter of Law because ABIM put forth no evidence of actual damages in this case, judgment must be granted in favor of Dr. Von Muller as to all of ABIM's claims. This is because ABIM has a *prima facie* burden to prove damages, a required element of all of its claims.

11

In addition, ABIM should not have been allowed to proceed with both claims, when its copyright infringement claim preempted its breach of contract claim.

### 1.   ABIM's Copyright Infringement Claim Should have been stricken

Plaintiff ABIM sought to collect actual damages in this case.  During her testimony, ABIM President and CEO Christine Cassel testified that ABIM seeks to recover <u>actual damages</u>. Dr. Cassel specifically testified as follows:

Q:      For that reason, am I correct that ABIM seeks here to recover damages, losses?

A:      Yes.

Q:      Its actual losses?

A:      Its actual losses, that's right.

*See* N.T. February 22, 2012, at pp. 115-116.

Under the law, examples of actual losses from copyright infringement include:

- A decrease in the market value of the copyrighted work caused by the infringement.
- Profits that Plaintiff proves it would have made without the infringement.

*See In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 563 (2d Cir. 1994); *Davis v. The Gap, Inc.*, 246 F.3d 152, 161, 167 (2d Cir. 2001);  *Sid & Marty Krofft Television Products, Inc. v. McDonald's*, Corp., 562 F.2d 1157, 1174 (9th Cir. 1977).

"[D]amages must be proved, and not just dreamed."  *MindGames, Inc. v. Western Pub'g Co.*, 218 F.3d 652, 658 (7th Cir. 2000).  To prove damages, ABIM must have established that the losses incurred bear a "necessary, immediate and direct causal connection" to the infringement. *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1170-71 (1st Cir. 1994).

Here, because ABIM did not put on any evidence as to "actual damages," as defined

12

above. Specifically, ABIM failed to show any loss of profit or decrease in market value, therefore its copyright infringement claim failed and should have been stricken.

### 2. ABIM's Breach of Contract Claim should have been stricken

To establish a claim for breach of contract, Pennsylvania law requires that a claimant establish "1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damage." *Nesselrotte v. Allegheny Energy, Inc.*, 615 F.Supp.2d 397 (W.D.Pa. 2009) *citing Church v. Tentarelli*, 953 A.2d 804, 808 (Pa.Super. 2008).

The standard under Pennsylvania law is that the plaintiff bears the burden of proof as to damages. *See Omicron Systems, Inc. v. Weiner*, 860 A.2d 554, 564-565 (Pa.Super. 2004). Again, because ABIM did not met its burden by putting forth any evidence that it suffered any damages, its breach of contract claim failed and should have been stricken as a matter of law.

### 3. Renewed Motion to Strike ABIM's Contract Claim as Duplicative of its Copyright Infringement Claim

As Dr. Von Muller argued in her March 1, 2012 Motion for Judgment as a Matter of Law, ABIM's breach of contract claim failed because it was subsumed and preempted by its copyright infringement claim. Therefore, the Court should have stricken ABIM's breach of contract claim.

> Under the Copyright Act, state law claims which fall within the subject matter of copyright are preempted. *See* 17 U.S.C. 301(a). To determine whether a state law cause of action is preempted by the Copyright Act, courts employ a "functional test." *Dun and Bradstreet Software Servs. v. Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 217 (3d Cir.2002). This functional test involves two related inquiries: (1) does the subject matter of the state law claim fall within the subject matter of copyright law, and (2) is the state law right equivalent to the exclusive rights afforded under the Copyright Act. *See Curtin v. Star Editorial, Inc.*, 2 F.Supp.2d 670, 674 (E.D.Pa.1998). If both requirements are not met, the state cause of action survives. *Gemel Precision Tool Co., Inc. v. Pharma Tool Corp.*, 35 U.S.P.Q.2d 1019, 1026-27 (E.D.Pa.1995).

*FedEx Ground Package Sys., Inc*, 2008 WL 4279751.

13

ABIM's breach of contract claim was preempted by its copyright infringement claim because its breach of contract claim and copyright infringement claims relied on exactly the same set of facts. *See* § I, *supra.* Therefore, under the first prong of the "functional test" discussed above, the subject matter of ABIM's breach of contract claim undoubtedly falls within the subject matter of its copyright infringement claim. *See id.*

The second prong of the "functional test" asks if the state law affords the same rights as the copyright law. *Id.* Again, the answer is yes. Under ABIM's breach of contract claim, it seeks the exclusive right to copy and distribute its exam questions. Identically, ABIM claims the exclusive right to copy and distribute its exam questions under its copyright infringement claim. Therefore, the second prong of the "functional test" is satisfied.

Accordingly, as a matter of law, ABIM's breach of contract claim was subsumed and preempted by its copyright infringement claim. Therefore, judgment as to ABIM's breach of contract claim should have been entered in Dr. Von Muller's favor as a matter of law.

**C.    Motion for a New Trial**

If the Court does not grant Dr. Von Muller's Renewed Motion for Judgment as a Matter of Law, Dr. Von Muller respectfully asks that the Court grant a new trial pursuant to Rule 59. The Court committed several errors of law and accordingly a new trial is warranted for the reasons discussed below.

**1.    Motion for a New Trial Based on Strong Evidence of Jury Confusion**

The Third Circuit has recognized that district courts have "considerable discretion" to grant new trials upon evidence of jury confusion. In *Brown v. Nutrition Mgmt. Services Co.*, 370 F. App'x 267 (3d Cir. 2010), the Third Circuit affirmed the district court's granting of a motion for a new trial on this basis. The Third Circuit agreed a new trial was warranted because the

14

jury's failure to award front pay in action alleging interference with employee's rights under Family and Medical Leave Act (FMLA) was contrary to the Court's charging instructions and a result of juror confusion. *Id.*

Similarly, in this case, there was clear evidence of the jury's failure to follow the Court's instructions and evidence of jury confusion. As Dr. Von Muller explained in her currently pending Motion to Mold the Verdict, "the Court instructed the Jury that if they found 'that [Dr. Von Muller had] proved her affirmative defense by a preponderance of the evidence, then [they] must find for the defendant.' [N.T. 3/5/12 at p. 146]. The verdict reflects that the Jury answered yes to Question 5 of the Special Interrogatories and found in favor of Dr. Von Muller's affirmative defense of merger." *See* Dkt. No. 137, this Motion is hereby incorporated by reference.

Because the jury found in favor of Dr. Von Muller's affirmative defense, it should not have awarded any damages. However, contrary to the Court's instructions, after finding in favor of Dr. Von Muller's affirmative defense, the jury went on to address damages for copyright infringement in the amount of $82,446.

As Dr. Von Muller argued in her Reply to her Motion to Mold the verdict, rationalizing the jury's verdict requires pure speculation and conjecture because the jury acted contrary to the Court's clear instructions. *See* Dkt. No. 150, this Reply is also hereby incorporated by reference. After finding in Dr. Von Muller's favor as to her affirmative Defense, the award of damages was surplusage and must be disregarded. *See, id.* at p. 2; *Floyd v. Laws,* 929 F.2d 1390, 1396 (9 th Cir. 1991).

Moreover, the jury awarded $8,668.00 for ABIM's breach of contract claim. This amount does not correspond to any evidence offered at trial. For example, this number was not disclosed

15

in any of the damages testimony offered by Mr. Mandes and is not divisible by the "replacement cost per question" he testified about.  Therefore, the amount of damages awarded under the contract claim is even more evidence that the jury verdict does not make sense and is the product of jury confusion.

At bottom, it is apparent from the jury's verdict and its answers to jury interrogatories that the jury did not follow the Court's instructions and was confused.  Here, as in *Brown*, the jury did not follow the Court's instructions about awarding damages.  *See Brown, supra.*  Accordingly, jury confusion is evident and a new trial is warranted.  *Id.*

### 2.   Motion for a New Trial based on the Court's Denial of Dr. Von Muller's Motion to Preclude Katzka's Testimony

Prior to trial, Plaintiff filed a Motion *in Limine* to Preclude the testimony of Dr. David Katzka.  Notably, Dr. Katzka was the only witness who provided testimony "matching" Dr. Von Muller's sample exam questions to questions from the ABIM examination question pool.  Dr. Katzka's testimony in this regard was both highly technical and vital to ABIM's case on copyright infringement.

In Dr. Von Muller's Motion as to Dr. Katzka, she argued that Dr. Katzka's testimony should have been precluded because he was an undisclosed expert witness.  This Motion is incorporated by reference and attached, without exhibits, as Exhibit B.  It is undisputed that Dr. Katzka was not disclosed as an expert and was proffered to offer highly technical scientific testimony.  The Court denied Plaintiff's Motion on February 20, 2012.  Dkt. No. 118.

After learning that Dr. Katzka did not even perform the "question matching" at issue himself, Plaintiff filed a Motion for Reconsideration arguing that Dr. Katzka could not testify as a fact witness because he did not have <u>any</u> personal knowledge about the facts of the case.  The

16

Motion was denied without argument. *See* N.T. 02/27/12 at p. 2. This Motion for

Reconsideration is incorporated by reference and attached as Exhibit C. In her Motion for

Reconsideration, Dr. Von Muller argued:

> The Third Circuit has been careful to note that, as a matter of law, lay witnesses cannot testify about scientific and technical matters, like the proffered testimony of Dr. Katzka:

> In 2000, Rule of Evidence 701 was amended by addition of subsection 701(c) to expressly exclude lay opinion based on scientific, technical, or other specialized information.

> The Advisory Committee's Note to the 2000 Amendment explains: Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witnesses clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

> By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 by simply calling an expert witness in the guise of a layperson. The Third Circuit and other courts have noted the global preclusion of any kind of lay opinion on specialized or technical subjects. *See Estate of Edward W. Knoster v. Ford Motor Co.*, 200 Fed. App'x 106, 111 n. 3 (3d Cir.2006)(Chagares, J.) ([Defendant] cites [*Asplundh* ] and *Sipes v. United States*, 111 F.R.D. 59, 61 (S.D.Cal.1986) for the proposition that Rule 701 permits lay opinion based on specialized knowledge. But Congress amended Rule 701 in 2000, and the new rule plainly supercedes these cases.; *see also Collins v. Prudential Inv. & Ret. Servs.*, 119 Fed. App'x 371, 379-80 (3d Cir.2005); *Applera Corp. v. MJ Research*, 389 F.Supp.2d 344, 353 (D.Conn.2005) (rejecting argument that lay opinion testimony on technical matters is permitted post-2000 amendment). *McCrary v. New Jersey Transit Rail Operations, Inc.*, CIV.A. 05-88 (DMC), 2008 WL 2885872. (D.N.J. July 23, 2008).

After the Court denied Plaintiff's Motion and Motion for Reconsideration, the Court

permitted Dr. Katzka to testify for several hours about highly technical, specialized medical

knowledge. This was clear and highly prejudicial legal error.

If, as ABIM claimed, Dr. Katzka was not testifying as an expert, his testimony should

17

have been limited to "those opinions or inferences which are (a) rationally based on the

perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or

the determination of a fact in issue, and (c) **not based on scientific, technical, or other**

**specialized knowledge. . ..**" *Hadley v. Pfizer*, Inc., 73 Fed. R. Serv. 3d 1046 (E.D. Pa. 2009)

(emphasis added).

As a result of the Court's rulings, Dr. Katzka offered technical testimony in direct

defiance of the Third Circuit's "global preclusion" of fact witnesses offering technical testimony.

*See McCrary, supra.* Therefore, the Court's denial of Plaintiff's Motion as to Katzka was

prejudicial error such that a new trial is warranted.

### a. Denial of Request to *Voir Dire* Katzka

After denying Defendant's Motion to Preclude Katzka, the Court denied Defendant's

Motion to *voir dire* Dr. Katzka. *See* N.T. 02/27/12 at pp. 2. This Motion was formally made as

part of Dr. Von Muller's Motion for Reconsideration as to Dr. Katzka's testimony. *See* Exhibit

C at p. 5. In the Motion, Dr. Von Muller argued:

> If the Court will not reconsider its rulings based on the arguments above,
> Dr. Von Muller respectfully asks for an opportunity to *voir dire* Dr. Katzka. Dr.
> Von Muller should be afforded the opportunity to create a record as to Dr.
> Katzka's proffered testimony, his qualifications, and the development of his
> "personal knowledge." Dr. Von Muller should have this opportunity before Dr.
> Katzka goes through his direct examination and causes incurable prejudice.

The Court denied Dr. Von Muller's Motion. *See* N.T. 2/27/12 at p. 2. However, not only

did the Court improperly deny this request, it compounded the prejudice when it later allowed

Plaintiff to *voir dire* one of Dr. Von Muller's <u>fact</u> witnesses. The Court, without explanation,

granted ABIM's request to *voir dire* Celia Thompson, Dr. Von Muller's accountant. *See* N.T.

03/01/12 at p. 3. Dr. Von Muller's Counsel immediately objected and noted that a completely

18

different position had been taken as to Dr. Katzka. *Id.*

The Court did not offer any explanation as to its uneven treatment in this regard. *Id.* In all, the Court's denial of Defendant's valid request to *voir dire* Dr. Katzka was legal error so prejudicial that a new trial should be ordered.

### 3. A New Trial is Warranted based on the Court's denial of Dr. Von Muller's Motion to Preclude Hearsay Evidence

Plaintiff introduced many hearsay emails between Dr. Arora and Dr. Von Muller at trial. As discussed above, these emails formed virtually the only basis for ABIM's claims. Namely, they provided the critical evidentiary support for ABIM's allegations that Dr. Von Muller purchased ABIM exam questions and disseminated questions from her exam to Dr. Arora. *See, e.g.,* N.T. 2/22/12 at pp. 20-23 (ABIM CEO Christine Cassel admitting on the record that the only evidence ABIM had against Dr. Von Muller when it filed its lawsuit were the hearsay emails between Dr. Arora and Dr. Von Muller and Dr. Von Muller's questions themselves and then failing to offer any additional evidence against Dr. Von Muller that had subsequently been discovered.)

Dr. Arora was not called to testify and explain his emails and the emails at issue are hearsay not within an exception. Defendant made an oral Motion to Limit Hearsay Evidence in the form of emails between Dr. Von Muller and Dr. Arora. The Court denied this Motion. Defendant also asked for a continuing objection as to the emails, which the Court granted. *See* N.T. 2/23/12 at pp. 83-84.

Plaintiff used the emails between Dr. Arora and Dr. Von Muller to suggest two main points, central to its case:

   (1)   That Dr. Von Muller had knowingly purchased actual ABIM test questions.

Specifically, Plaintiff asked Dr. Von Muller:

> Q:    Dr. Von Muller, in this e-mail, Dr. Arora tells you, "My collection for previous GI exams includes 41 pages of material containing over 150 actual questions and my answers with some references." Isn't that what he says?

> A:    That's what it says.

> Q:    Okay. So Dr. Arora described his GI material as actual questions from previous GI exams, didn't he?

> A:    It says previous GI exams, not previous Board exams. I understand that. Okay.

> Q:    My question to you is Dr. Arora described his GI material as actual questions from previous GI exams; correct?

> A:    That's correct.

N.T. 2/23/12 at p. 82.

(2)    Plaintiff also suggested that as payment for the questions she received from Dr. Arora, Dr. Von Muller agreed to send back questions taken from her examination:

> Q:    Okay. So Dr. Arora tells you in this e-mail he has over 150 actual questions from previous GI exams and that the cost is $480 plus your promise to send questions soon after the exam. That's what he tells you?

> A:    That's what the e-mail says.

*Id.* at p. 83.

Allowing this hearsay testimony into evidence and suggesting to the jury what Dr. Arora meant from his emails, without calling Dr. Arora as a witness, was improper and extremely prejudicial. The prejudice here is apparent because the hearsay evidence was offered as ABIM's proof that Dr. Von Muller purchased actual exam questions, i.e. breached a contract with ABIM and committed copyright infringement, and disseminated actual exam questions, i.e. breached a contract with ABIM and committed copyright infringement.

20

ABIM did not and could not lay a proper foundation for its claims without calling Dr.

Arora to testify.  His emails were out of court statements offered for the truth of the matter.

Allowing in the hearsay emails created incurable prejudice.  This clear error requires the granting

of Defendant's request for a new trial.

### 4.   A New Trial is Warranted because the Court Improperly Denied Dr. Von Muller's Motion to Compel Information on the Arora Settlement

On May 26, 2012, Defendant filed a Motion to Compel, *inter alia*, information about a

settlement ABIM entered into with Dr. Arora.  *See* Dkt. No. 44.  In the Motion, Dr. Von Muller

argued:

> As this Court is already aware, the instant litigation is related to a prior litigation between ABIM and Arora Board Review.  In both litigations, ABIM claimed it was damaged by a defendant's alleged copying of exam questions. ABIM settled the Arora Board litigation with a settlement agreement, in which it received a certain financial sum, presumably as compensation for exam questions ABIM claimed were compromised and had to be replaced. In the instant litigation, ABIM is seeking a second recovery for the alleged compromise of the same questions at issue in the Arora Board litigation.  Therefore, the amount of financial compensation ABIM received in the Arora Board review litigation is directly relevant to the amount of damages it can attempt to obtain in the instant litigation.
>
> Under Pennsylvania law, a plaintiff is only permitted to obtain one satisfaction for its harm.  *Brandt v. Eagle*, 412 Pa.Super. 171, 602 A.2d 1364, 1367 (Pa.Super.Ct.1992).  "[T]he 'one satisfaction' rule bars a subsequent suit against another tortfeasor only where the prior proceedings can reasonably be construed to have resulted in a full satisfaction of the plaintiff's claim." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir.1999) (*quoting Frank v. Volkswagenwerk*, 522 F.2d 321, 324-26 (3d Cir.1975)).  The one satisfaction rule is particularly relevant in a case like the instant one where a plaintiff's alleged damages are a sum capable of being calculated and made certain.  Therefore, the amount of the settlement between ABIM and Arora Board review is relevant to the current litigation because ABIM should not be entitled to seek a double recovery for the same alleged injury.

*See* Dkt. No. 44 at p. 4.

On June 23, 2011, the Court Denied Dr. Von Muller's Motion to Compel without

21

opinion. *See* Dkt. No. 51.

In denying Dr. Von Muller's Motion to Compel, the Court committed prejudicial legal error. As a result of the Court's denial of Defendant's Motion to Compel, ABIM was allowed to introduce unchallenged testimony at trial that ABIM was forced to replace exam questions as a result of Dr. Von Muller and only Dr. Von Muller. *See* testimony of Mr. Mandes, discussed above.

It is likely that this is not true. It is likely that the exact same questions ABIM alleged Dr. Von Muller "compromised" were "compromised" by Dr. Arora and ABIM was already compensated for the "cost" of replacing the questions through a settlement with Dr. Arora. However, by denying Dr. Von Muller's Motion to Compel the terms of the settlement agreement, the Court effectively permitted ABIM to receive double recovery. ABIM's double recover is forbidden by Pennsylvania law and accordingly a new trial (and Dr. Von Muller's Motion to Compel) should be granted. *See generally, Greenleaf*, 174 F.3d 352.

### 5.     A New Trial is Warranted due to the Court's Prejudicial Attitude towards Dr. Von Muller and Her Counsel

The Court acted in a manner towards Dr. Von Muller's counsel that warrants a new trial. Throughout the trial, the Court treated the parties unequally and made several prejudicial and disparaging comments about Dr. Von Muller's counsel in front of the jury, including the following:

As discussed above, the Court denied Dr. Von Muller's request to *voir dire* Dr. Katzka, and then, without explanation, granted ABIM's request as to one of Dr. Von Muller's witnesses. This is only one example of the Court's uneven treatment of Plaintiff's and Defendant's counsel during the trial.

Next, the Court made several disparaging comments about Dr. Von Muller's counsel in

front of the jury. These comments included repeatedly telling Dr. Von Muller's counsel that objections were "clearly" overruled. *See, e.g.* N.T. 2/27/12 at p. 26. The Court also repeatedly told Dr. Von Muller's counsel to "move along" as though Dr. Von Muller's counsel was improperly causing a delay in the trial. For example, after Defendant's counsel objected to a certain document because Plaintiff had not previously disclosed it, the Court stated, "Excellent. Your objection is noted. It is clearly overruled. Moving along." N.T. 2/27/12 at p. 31.

In addition, at one point the Court told Dr. Von Muller's counsel - - again in front of the jury - - that he was "wrong" and "made a mistake" by showing a document to the jury that had not been moved into evidence, even though Defendant's counsel was following the same practice that all counsel had followed through that point. N.T. 2/23/12 at p. 15. Rather than acknowledge the truth, that documents had been shown to the jury that had not been moved into evidence just the day before, the Court admonished Defendant's counsel in front of the jury telling him, "If you don't know that, then you should learn." *Id.*

Finally, the Court exhibited a general attitude of annoyance and disinterest throughout the trial. Evidence of the Court's attitude includes the Court stating at a pre-trial conference that Defendant "should not have done what it was alleged she had done" i.e. stating that the Court thought Dr. Von Muller was guilty. Also, the Court admitted at points that it was not even listening to the evidence as it was being presented at trial, telling the jury at one point, for example, "When I ask the court reporter to read a question back, it's because I'm not listening to the testimony." N.T. 3/2/12 at pp. 14-15.

In all, the Court's attitude about the case and Dr. Von Muller's counsel unfolded in front of the jury in an prejudicial way. As a result of the Court's conduct, Dr. Von Muller's counsel moved for a mistrial. *See* N.T. 3/2/12 at pp. 182-189. The Court improperly denied Dr. Von

23

Muller's request for a mistrial and a new trial should now be granted in light of the Court's prejudicial conduct as discussed above.

### 6.   Improper Preclusion of Dr. Von Muller's Damages Evidence

As the Court is aware, Dr. Von Muller also had counter claims against ABIM for, *inter alia*, Tortious Interference with Contractual Relations. The Court committed error by not permitting Dr. Von Muller to present evidence of her actual damages into evidence.[3]

Dr. Von Muller operated part of her practice under a company called VIP endoscopy. Dr. Von Muller's husband is the owner of VIP endoscopy. However, Dr. Von Muller's practice paid the salaries of both VIP and her own practice. Therefore, Dr. Von Muller's practice appeared to have much lower revenue that it really did. The Court, in error, denied testimony about income from VIP from Dr. Von Muller's accountant Ms. Celia Thompson as follows:

> THE COURT: So what you're saying, ma'am, is that this sum that is going back to  Dr. Von Muller is inclusive of sums that she  gave to VIP.

> THE WITNESS: For income tax purposes they didn't want to do two payroll reports, two W-2s and all of that, so they did a common paymaster which says that one entity will pay all the salaries. The other one will pay for that benefit, at least those employees.

> THE COURT: So this figure that you're talking about that you have shown as income to her is inclusive of moneys that have gone to other employees?

> THE WITNESS: Yes. She's just trying to get whole because she obviously didn't need all those employees herself. VIP needed employees. It was cheaper on both entities if they did a common paymaster. That's very commonly done in lots of businesses.

> THE COURT: That's not my concern, whether it's common or not.

---

[3]Plaintiff may argue that the jury's finding that Dr. Von Muller breached a contract and infringed ABIM's copyright precluded her counterclaims. That is not true. If presented with the appropriate evidence, the jury could have found that ABIM's interference with Dr. Von Muller's contractual relations was independent of any of Dr. Von Muller's actions.

THE WITNESS:  Okay.

THE COURT:  I'm going to sustain the objection to this line of questioning pursuant to that last answer, counsel.  She says it includes other employees, and that your client was being refunded in that regard.  If you can limit it as to her work and hers alone, then we can go from there, but other than that, it won't be allowed.

BY MR. ELLIS:  For these other employees that she was being refunded from VIP, was that money that she already  paid out of her pocket?

A:  Yes.

Q:  So she already paid the salaries out of her pocket for herself?

MR. LANTIERI:  Objection, Your Honor, I believe, for the same grounds.

THE COURT:  Yes, I think you're just regurgitating what I had previously gone over.

MR. ELLIS:  I'm trying to build a record, Your Honor.

THE COURT:  Go ahead.

BY MR. ELLIS:  These are funds that she paid out of her pocket for her own salary and for the salaries of nurses and other people that did procedures at VIP, correct?

A:  Yes.

N.T. 3/1/12 at pp. 149-151.

Because Dr. Von Muller's counsel established on the record that Dr. Von Muller paid VIP's salaries out of her own practice, Dr. Von Muller should have been allowed to offer testimony about VIP reimbursing her for those expenses.  The Court precluded this testimony in error.

### 7.    The Court Committed Error by Granting Motion to Strike Tortious Interference with Contractual Relations Claim

The Court also improperly granted ABIM's Motion for Judgment as a Matter of Law as to Dr. Von Muller's counter claim for Tortious Interference with Contractual Relations. ABIM moved for Judgment as a matter of law and the Court granted ABIM's motion, without opinion, on March 8, 2012. *See* Dkt. Nos. 135 and 138. Dr. Von Muller moved for reconsideration of this decision, which the Court also denied. N.T. 3/2/12 at p. 183.

To set forth a tortious interference claim, Dr. Von Muller must have shown: (1) the existence of an existing or prospective contractual relationship between plaintiffs and a third party; (2) intent on the part of defendants to harm the plaintiffs by interfering with this relationship; (3) absence of privilege or justification for such interference; and (4) actual harm or damage to plaintiffs as a result of defendants' conduct. *United States Healthcare v. Blue Cross of Greater Phila.*, 898 F.2d 914, 925 (3d Cir. 1990) *citing Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 208, 412 A.2d 466 (Pa.1 979).

The Pennsylvania Supreme Court has defined "prospective contractual relation" as "something less than a contractual right, something more than a mere hope." *Mansman v. Tuman*, 970 F.Supp. 389, 398 (E.D.Pa. 1997). In other words "it is a reasonable probability that a contractual relationship will be established. *Id. citing U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 925 (3d Cir. 1990)(internal cites omitted).

In its Motion ABIM asserted that Dr. Von Muller had failed to prove ABIM's actions caused any third party to breach a contract. This assertion was not supported but the record.

First, Dr. Von Muller did put forth evidence that a contract had been breached because ABIM suspended her board certification status. Prior to the lawsuit, Dr. Von Muller had staff privileges at St. Francis Hospital. N.T. 3/1/12 at p. 247. Dr. Von Muller testified that as a result

26

of her suspension, ". . .there was a meeting between myself and the Credentialing staff. Initially, when they had checked the internal medicine board website and saw that it was official and that I was actually suspended, they made the decision to terminate - they didn't want me on the staff after that." *Id.* at p. 251. In other words, Dr. Von Muller clearly testified that as a result of ABIM's conduct, St. Francis Hospital broke an existing contract it had with her.

Second, Dr. Von Muller provided unequivocal testimony that as a result of her suspension, she could not perform procedures and be reimbursed by Medicare. *See e.g.* N.T. 3/1/12 at p. 260 ("I know that from having gone through this before with Saint Francis South and having pulled all of my insurance contracts and looked at them, I knew that I would be in violation of those contracts, and that I might even be subjected to criminal charges if I continued to practice.") Again, this testimony provided additional evidence of breach of a third party contract as a result of ABIM's conduct.

Therefore, given the record above, Dr. Von Muller put in sufficient evidence to support her tortious interference claim and the Court should not have stricken it.

## IV.    Conclusion

Dr. Von Muller respectfully requests that the Court strike Mr. Mandes' testimony in its entirety and grant Judgment as a Matter of Law in her favor with respect to all of ABIM's claims for the reasons listed above.  In the alternative, Dr. Von Muller respectfully submits that a new trial should be granted.

Respectfully submitted,

By:    /s/ Aaron J. Freiwald, Esquire
AARON J. FREIWALD, ESQUIRE
GLENN A. ELLIS, ESQUIRE
KATHERINE M. ROBINSON, ESQUIRE
Counsel for Defendant/Counterclaim
Plaintiff, Sarah Von Muller, M.D.

LAYSER & FREIWALD, P.C.
1500 Walnut Street 18th floor
Philadelphia, PA  19102
215-875-8000
Fax:  215-875-8575
ajf@layserfreiwald.com
gae@layserfreiwald.com
kr@layserfreiwald.com

Date:  April 4, 2012