# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| AMERICAN BOARD OF INTERNAL MEDICINE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 2:10-cv-2680-JCJ |
| | : | |
| SARAH VON MULLER, M.D., | : | |
| | : | |
| Defendant/Counterclaimant, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN BOARD OF INTERNAL MEDICINE, CHRISTINE K. CASSEL, M.D., LYNN O. LANGDON, M.S., and ERIC S. HOLMBOE, M.D., | : | |
| | : | |
| Counterclaim Defendants. | : | |

**PLAINTIFF AND COUNTERCLAIM DEFENDANTS' RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION IN THE ALTERNATIVE FOR A NEW TRIAL (DOC. NO. 153)**

Hara K. Jacobs
Paul Lantieri III
Corinne Militello
Nicholas H. Pennington
Pa. Bar ID Nos. 74832, 88160, 205889, 307073
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Tel.    215.665.8500
Fax     215.864.8999
jacobsh@ballardspahr.com
lantierip@ballardspahr.com
militelloc@ballardspahr.com
penningtonn@ballardspahr.com

Date:  April 23, 2012          *Attorneys for American Board of Internal Medicine*

## TABLE OF CONTENTS

*Page*

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     ARGUMENT ................................................................................................ 2

A.      Dr. Von Muller Must Satisfy Stringent Standards To Prevail On Her
Motion.................................................................................................... 2

B.      Dr. Von Muller's Renewed Motion For Judgment As A Matter Of Law
Fails Because The Jury Had Ample Evidentiary Bases For Its Verdict On
ABIM's Copyright And Contract Claims ................................................. 3

        1.      ABIM Presented Sufficient Evidence Of Actual Damages To
                Support Its Copyright And Contract Claims................................. 3

        2.      ABIM's Contract Claim Is Founded On Different Grounds Than
                Its Copyright Claim...................................................................... 6

C.      Dr. Von Muller's Motion For New Trial Fails Because There Is No
Evidence Of Jury Confusion................................................................... 8

D.      Dr. Von Muller's Motion For New Trial Fails Because The Court Made
No Errors Of Law, Much Less Any Prejudicial Errors Of Law ........................ 10

        1.      The Court Properly Permitted Dr. Katzka To Testify............................... 10

        2.      The Court Properly Denied Dr. Von Muller's Request To *Voir
                Dire* Dr. Katzka............................................................................... 13

        3.      ABIM Did Not Improperly Rely On Hearsay In E-mails Between
                Dr. Von Muller And Dr. Arora ................................................. 15

        4.      The Court Properly Excluded Evidence Of ABIM's Settlement
                With Arora Board Review ....................................................... 17

        5.      The Court's "Attitude" Toward Dr. Von Muller's Counsel Does
                Not Warrant A New Trial ....................................................... 18

        6.      Whether The Exclusion Of Evidence Of Alleged Payments From
                VIP Endoscopy To Dr. Von Muller's Medical Practice Was Proper
                – Which It Was – Is Irrelevant Because The Jury Separately Found
                No Basis For Liability On Dr. Von Muller's Counterclaims .................. 20

DMEAST #14869828 v1

7.    The Court Properly Granted Judgment As A Matter Of Law To
      ABIM And The Individual Counterclaim Defendants On Dr. Von
      Muller's Tortious Interference Claim ....................................................... 21

III.    CONCLUSION.................................................................................................. 24

DMEAST #14869828 v1

# <u>TABLE OF AUTHORITIES</u>

*Page*

### Cases

<u>Acumed LLC v. Advanced Surgical Services, Inc.</u>, 561 F.3d 199 (3d Cir. 2009) ......................23

<u>Agere Systems, Inc. v. Advanced Environmental Technology Corp.</u>, 602 F.3d 204(3d Cir. 2010) ............................................................................................................................16

<u>Agere Systems, Inc. v. Atmel Corp.</u>, No. 02-864, 2005 WL 6728524 (E.D. Pa. Feb. 24, 2005) ...........................................................................................................................12

<u>Al Hamilton Contracting Co. v. Cowder</u>, 644 A.2d 188 (Pa. Super. Ct. 1994)...................... 21-22

<u>American Home Assurance Co. v. Sunshine Supermarket, Inc.</u>, 753 F.2d 321 (3d Cir. 1985) ..................................................................................................................... 18-19

<u>Arlington Industries, Inc. v. Bridgeport Fittings, Inc.</u>, 692 F. Supp. 2d 487 (M.D. Pa. 2010)......18

<u>Association of American Medical Colleges v. Mikaelian</u>, 571 F. Supp. 144 (E.D. Pa. 1983)........5

<u>Berger v. Zeghibe</u>, No. 11-1087, 2012 WL 580653 (3d Cir. Feb. 23, 2012) ................................19

<u>Brandt v. Eagle</u>, 602 A.2d 1364 (Pa. Super. Ct. 1992)..................................................................18

<u>CGB Occupational Therapy v. RHA Health Services</u>, 357 F.3d 375 (3d Cir. 2004)...................23

<u>Dent v. Westinghouse</u>, Civ. No. 08-83111, 2010 U.S. Dist. LEXIS 84 (E.D. Pa. Jan. 4, 2010) ............................................................................................................................17

<u>Dukes v. Lancer Insurance Co.</u>, No. 08-4948, 2009 WL 4609598 (D.N.J. Dec. 4, 2009) ...........19

<u>E.C. Ernst, Inc. v. Koppers Co., Inc.</u>, 626 F.2d 324 (3rd Cir. 1980) ..............................................6

<u>Educational Testing Services v. Katzman</u>, 793 F.2d 533 (3d Cir. 1986) ...............................5, 8, 9

<u>Forest Laboratories, Inc. v. IV AX Pharmaceuticals, Inc.</u>, 237 F.R.D. 106 (D. Del. 2006)..........12

<u>Frank v. Volkswagenwerk</u>, 522 F.2d 321 (3rd Cir. 1975)..............................................................18

<u>Frankel v. United States</u>, 321 F. Supp. 1331 (E.D. Pa. 1970), *aff'd*, 466 F.2d 1226 (3rd Cir. 1972) .............................................................................................................................6

<u>Goodman v. Pennsylvania Turnpike Commission</u>, 293 F.3d 655 (3d Cir. 2002)...........................2

<u>Greenleaf v. Garlock, Inc.</u>, 174 F.3d 352 (3rd Cir. 1999) ............................................................18

DMEAST #14869828 v1

Gusler v. Fischer, 580 F. Supp. 2d 309 (S.D.N.Y. 2008) ................................................7

Hilbert v. Roth, 149 A.2d 648 (Pa. 1959)......................................................................18

Irise v. Axure Software Solution, Inc., No. 08-03601, 2009 WL 3615075 (C.D. Cal. Sept. 11, 2009) ........................................................................................................................12

Liteky v. United States, 510 U.S. 540 (1994)................................................................19

Mainardi v. Prudential Insurance Co. of America, No. 08-3605, 2009 U.S. Dist. LEXIS 6935 (E.D. Pa. Jan. 30, 2009) ...........................................................................................7

Massachusetts Bonding & Insurance Co. v. Johnston & Harder, 22 A.2d 709 (Pa. 1941) ............6

Miller v. Universal City Studios, Inc., 650 F.2d 1365 (5th Cir. 1981)........................................12

National Conference of Bar Examiners v. Multistate Legal Studies, Inc., 458 F. Supp. 2d 252 (E.D. Pa. 2006).................................................................................5, 8, 9

National Council of Examiners for Engineering & Surveying v. Cameron-Ortiz, 626 F. Supp. 2d 262 (D.P.R. 2009)...........................................................................5, 6

Philips v. Selig, 959 A.2d 420 (Pa. Super. Ct. 2008)....................................................23

Rochez Bros., Inc. v. Rhoades, 527 F.2d 891 (3rd Cir. 1975), cert. denied, 425 U.S. 993 (1976)..............................................................................................................6

Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466 (Pa. 1979) ................................22

United States v. Beaty, 722 F.2d 1090 (3d Cir. 1983)............................................ 19-20

United States v. Kale, 445 F. App'x 482 (3d Cir. 2011) .............................................11

United States v. Olgin, 745 F.2d 263 (3d Cir. 1984)....................................................19

## Statute, Regulation & Rules

17 U.S.C. § 504..........................................................................................................5

42 C.F.R. § 410.20.....................................................................................................23

Fed. R. Civ. P. 26......................................................................................................14

Fed. R. Civ. P. 50........................................................................................................2

Fed. R. Civ. P. 59........................................................................................................3

Fed. R. Civ. P. 61........................................................................................................3

iv

Fed. R. Evid. 104 ...............................................................................................13

Fed. R. Evid. 408 ...............................................................................................17

Fed. R. Evid. 801 ...............................................................................................16

**Treatises**

Mueller & Kirkpatrick, <u>Federal Evidence</u> (3d ed. 2011) ...............................................13

Wright, Miller & Kane, <u>Federal Practice & Procedure</u> ...............................................18

DMEAST #14869828 v1

Plaintiff, American Board of Internal Medicine ("ABIM"), and the individual counterclaim defendants respectfully submit this memorandum of law in opposition to the renewed motion of defendant, Sarah Von Muller, M.D., for judgment as a matter of law and her motion in the alternative for a new trial (Doc. No. 153) ("Motion").

## I.      PRELIMINARY STATEMENT

After a twelve-day trial, the jury concluded that Dr. Von Muller willfully infringed ABIM's copyright in its Certifying Examination in Gastroenterology ("Gastroenterology Examination") and breached her confidentiality agreement with ABIM by disclosing content from the Gastroenterology Examination.  The jury also found for ABIM and the individual counterclaim defendants on Dr. Von Muller's commercial disparagement, defamation, and invasion of privacy counterclaims.  And, at the conclusion of her case, the Court entered judgment as a matter of law for ABIM and the individual counterclaim defendants on Dr. Von Muller's tortious interference counterclaim.

Dr. Von Muller now seeks judgment as a matter of law on ABIM's copyright and contract claims and/or a new trial on all of the claims that were resolved at trial.  Although she asserts at least ten different grounds for relief, her Motion presents nothing new.  In fact, the Motion only rehashes arguments that she previously made – and that ABIM has already conclusively and successfully defended – in pretrial motions *in limine*; motions made during the trial to strike testimony, for judgment as a matter of law, and for a mistrial; and in an earlier post-trial motion to alter the verdict.  In some instances, Dr. Von Muller presents arguments that she has already tried two or three times.

Thus, Dr. Von Muller's Motion only underscores what ABIM has set forth in its pending motion for attorneys' fees:  throughout this litigation, through the trial and continuing to this day, Dr. Von Muller has taken objectively unreasonable and meritless legal and factual

positions, and she has baselessly and unnecessarily multiplied the litigation.  ABIM should not

be required to expend even more resources to point out the same legal errors and the same

factual deficiencies in Dr. Von Muller's contrived positions over and over again.  Yet, that is

exactly what Dr. Von Muller's Motion requires ABIM to do.

       In any event, as ABIM discusses below in addressing each of Dr. Von Muller's

arguments in turn, the record conclusively establishes that:  (i) the jury had a legally sufficient

evidentiary basis to find for ABIM on its copyright and contract claims; (ii) the jury's decision

does not reflect any confusion or injustice; and (iii) the Court made no errors of law, much less

any materially prejudicial errors.  Accordingly, the Court should deny the Motion.

## II.    ARGUMENT

### A.    <u>Dr. Von Muller Must Satisfy Stringent Standards To Prevail On Her Motion</u>

       As Dr. Von Muller concedes, she faces high hurdles in her requests for judgment

as a matter of law notwithstanding the jury verdict or for a new trial.  (*See* Mot. at 3-5.)

       Indeed, the Third Circuit has instructed that judgment as a matter of law "should

be granted sparingly."  <u>Goodman v. Pennsylvania Turnpike Comm'n</u>, 293 F.3d 655, 665 (3d Cir.

2002).  Judgment as a matter of law on ABIM's copyright and contract claims would be

appropriate only if Dr. Von Muller could demonstrate that a reasonable jury would not have had

a legally sufficient evidentiary basis to find for ABIM on those claims.  *See* Fed. R. Civ. P.

50(a)(1) & (b).  In its analysis, the Court "must draw all reasonable inferences in favor of

[ABIM], and it may not make credibility determinations or weigh the evidence."  <u>Goodman</u>, 293

F. 3d at 665.  Thus, "[k]ey to surviving a Rule 50 motion is a legally sufficient evidentiary basis

for the verdict."  <u>Id.</u>  Here, the jury had ample evidentiary bases for its verdict on ABIM's

copyright and contract claims.

There is likewise no basis for a new trial.  Under Rule 59, a new trial may be granted after a jury trial for a "reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Rule 61, however, imposes an important limitation on the application of Rule 59:

> Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order.  At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantive rights.

Fed. R. Civ. P. 61 ("Harmless Error").

Dr. Von Muller asserts two grounds for a new trial:  (i) that the jury's decision reflects confusion and imposes a "miscarriage of justice"; and (ii) that the Court made prejudicial errors of law.  (*See* Mot. at 5.)  In fact, as further discussed below, there is no basis whatsoever to conclude that the verdict is the product of jury confusion or effects any injustice, or that the Court made any errors of law, much less any prejudicial errors that would warrant a new trial.

**B.     Dr. Von Muller's Renewed Motion For Judgment As A Matter Of Law Fails Because The Jury Had Ample Evidentiary Bases For Its Verdict On ABIM's Copyright And Contract Claims**

**1.     ABIM Presented Sufficient Evidence Of Actual Damages To Support Its Copyright And Contract Claims**

Notwithstanding that ABIM has conclusively responded to this argument three times, Dr. Von Muller again argues that she should be granted judgment as a matter of law on ABIM's copyright infringement and breach of contract claims because "ABIM did not put on any evidence as to 'actual damages.'"[1]  (Mot. at 12; *see also* <u>id.</u> at 10 ("There was no testimony

---

[1]     Dr. Von Muller sought to exclude the testimony of Mr. Mandes through a motion *in limine*, which the Court denied, on these same grounds.  (*See* Doc. Nos. 83 & 105.)  And at trial, she moved to strike Mr. Mandes's testimony and for judgment as a matter of law

(continued...)

at trial that ABIM incurred any real losses.").)  Dr. Von Muller thus asks the Court to ignore the

evidence ABIM adduced at trial and the well-established applicable evidentiary standards.

ABIM adduced substantial evidence at trial that it suffered damages as a result of

Dr. Von Muller's copying and disclosure of fifty copyrighted questions from her 2008

Gastroenterology Examination.  For example, ABIM's Chief Operating Officer, Lynn O.

Langdon, testified that ABIM removed the questions that Dr. Von Muller compromised from its

live question pool because a compromised question "can't do what it's supposed to do in an

exam." (Feb. 24, 2012 Trial. Tr. at 198:15 – 199:7.[2])  Ms. Langdon further testified that ABIM

would have to replace the compromised exam questions with new questions.  (Id.)  And several

of ABIM's witnesses testified about the extraordinary investment of money and other resources

ABIM makes in its question development process.  (See, e.g., Feb. 22, 2012 Trial Tr. at 153:11 –

163:6 (ABIM's Vice President of Psychometrics & Research Analysis, Rebecca S. Lipner); Feb.

28, 2012 Trial Tr. at 153:24 – 155:11 (Ms. Langdon); Feb. 29, 2012 Trial Tr. at 35:9 – 179:11

(ABIM's Chief Financial Officer, Vincent J. Mandes).)  Mr. Mandes in particular testified at

length (and was cross-examined at even greater length) about his highly detailed analysis of the

costs of each component of the question development process.  (See Feb. 29, 2012 Trial Tr. at

35:9 – 179:11 & Mar. 1, 2012 Trial Tr. at 6:13 – 59:11; Trial Ex. P-56.)

Dr. Von Muller argues that all of this evidence was "highly speculative" and

insufficient to show any actual damage to ABIM.  (See Mot. at 10-13.)  Essentially, she argues

---

(...continued)
> on ABIM's claims based in part on these grounds.  (Doc. No. 129; Mar. 1, 2012 Trial. Tr.
> at 60:20 – 70:3.)  The Court also denied those motions.  (See Doc. No. 131.)

[2]     Pertinent discrete portions of trial testimony, and the trial exhibits cited in this
memorandum, are included in the appendix hereto.

that ABIM could not show at trial that it had been damaged yet because ABIM had not yet

replaced all of the questions she compromised.  She is plainly wrong.  Whether ABIM has or has

not already spent the money to replace the questions Dr. Von Muller compromised is irrelevant.[3]

As ABIM's counsel argued by way of analogy at trial, someone who has her car stolen has been

damaged by the thief regardless of whether she has chosen to replace the car.

        As set forth in ABIM's response to Dr. Von Muller's motion *in limine* regarding

this issue (Doc. No. 88) – which ABIM incorporates and therefore only summarizes herein –

Section 504(a) of the Copyright Act provides that a copyright owner may seek his actual

damages from the infringer.  *See* 17 U.S.C. § 504(a).  "Actual damages may include both the

direct expenses resulting from the copyright infringement and the loss in the fair market value of

the copyright." Nat'l Conf. of Bar Examiners v. Multistate Legal Studies, Inc., 458 F. Supp. 2d

252, 260 (E.D. Pa. 2006).  Moreover, the copying and disclosure of copyrighted secure

examination questions renders the questions worthless to the copyright holder.  *See, e.g.*, Educ.

Testing Servs. v. Katzman, 793 F.2d 533, 543 (3d Cir. 1986) (explaining that infringement of

secure test questions "renders the materials worthless"); Ass'n of Am. Med. Colls. v. Mikaelian,

571 F. Supp. 144, 153 (E.D. Pa. 1983) (finding that infringement of protected MCAT questions

destroys all value in the questions); Nat'l Council of Exam'rs for Eng'g & Surveying v.

Cameron-Ortiz, 626 F. Supp. 2d 262, 269 (D.P.R. 2009) (similar).  Thus, the loss of fair market

value of infringed secure examination questions is calculated by determining the costs of

---

[3]     Dr. Von Muller disregards the testimony of Ms. Langdon and Mr. Mandes that ABIM
        had in fact, shortly before the trial began, held an additional gastroenterology test
        committee meeting to begin work on replacing the compromised questions, and therefore
        incurred expenses.  (Feb. 28, 2012 Trial Tr. at 201:17 – 202:7; Feb. 29, 2012 Trial Tr. at
        71:15 – 72:15.)

developing questions.  *See, e.g.*, Nat'l Council of Exam'rs for Eng'g & Surveying, 626 F. Supp. 2d at 269 (awarding the plaintiff the cost of replacing compromised exam questions).

In addition, a plaintiff is required to furnish only a reasonable quantity of information from which the fact-finder may fairly estimate the amount of damages.  *See* Frankel v. United States, 321 F. Supp. 1331, 1345 (E.D. Pa. 1970), *aff'd*, 466 F.2d 1226 (3rd Cir. 1972). Thus, while the jury may not use sheer conjecture as a basis for arriving at a verdict, it may use a measure of speculation in aiming at a verdict or an award of damages.  *See, e.g.*, E.C. Ernst, Inc. v. Koppers Co., Inc., 626 F.2d 324 (3rd Cir. 1980) (holding that damages must be proved with reasonable certainty, and that evidence of damages may consist of probabilities and inferences); Rochez Bros., Inc. v. Rhoades, 527 F.2d 891, 895 (3rd Cir. 1975), *cert. denied*, 425 U.S. 993 (1976) (noting that "sufficient facts must be introduced so that the [jury] can arrive at an intelligent estimate without conjecture").  When the amount of damage can be fairly estimated from the evidence, the recovery will be sustained even though such amount cannot be determined with entire accuracy.  *See* Mass. Bonding & Insurance Co. v. Johnston & Harder, 22 A.2d 709, 714 (Pa. 1941).

Accordingly, the evidence ABIM adduced at trial is precisely the kind of evidence that was required to prove its copyright infringement damages, and far exceeded the levels of certainty and specificity required to prove damages for its copyright and contract claims.

## 2.    ABIM's Contract Claim Is Founded On Different Grounds Than Its Copyright Claim

Dr. Von Muller separately argues that the Court should grant her judgment as a matter of law on ABIM's contract claim because it is "duplicative" of and "preempted" by ABIM's copyright claim.  (Mot. at 13-14.)  As the Court correctly recognized when Dr. Von Muller presented the same argument at trial, "[e]ach of these claims have individual elements

6

that are different and distinct as for each of the claims that the plaintiff is pursuing.  There [was] more than adequate evidence to all of these . . . claims to be presented to the jury for their consideration and deliberation."  (March 1, 2012 Trial Tr. at 80:12-19.)  Accordingly, the copyright claim is different than, and does not preempt, the contract claim.  *See* Gusler v. Fischer, 580 F. Supp. 2d 309, 319 (S.D.N.Y. 2008) (holding that because a claim for breach of a nondisclosure agreement is "premised on the existence of . . . allegations beyond mere reproduction," it is "qualitatively different from [a] copyright infringement claim" arising from the same conduct and thus not preempted); *see also* Mainardi v. Prudential Ins. Co. of Am., No. 08-3605, 2009 U.S. Dist. LEXIS 6935, at *17-19 (E.D. Pa. Jan. 30, 2009) (holding that copyright law does not preempt a contract claim because unlike a copyright claim, a contract claim requires a promise by the defendant, and thus the claims are qualitatively different).

Moreover, the fallacy in Dr. Von Muller's argument that the copyright and contract claims rest on the same rights (Mot. at 13-14) was borne out by the jury's verdict.  As further discussed in the next section of this memorandum, while the jury found Dr. Von Muller liable for infringing ABIM's copyright in certain examination questions, it separately found her liable for breaching her confidentiality agreement by disclosing content from other examination questions.  This, of course, reflects the fundamentally different underpinnings of the two claims. Whether Dr. Von Muller "copied" ABIM examination questions as required for copyright infringement is a different question than whether she breached her obligation not to "disclose, copy, or reproduce any portion of the material contained in [her] examination" (*see* Doc. No. 62 (Joint Pretrial Mem.) at 6-7).

Accordingly, the Court should deny Dr. Von Muller's renewed motion for judgment as a matter of law.

C.    **Dr. Von Muller's Motion For New Trial Under Rule 59 Fails Because There Is No Evidence Of Jury Confusion**

Just as she argued in her pending motion to mold the jury's verdict (Doc. No. 137), Dr. Von Muller argues that the jury must have been confused, or that the jury failed to follow the Court's instructions, because although the jury concluded that Dr. Von Muller willfully infringed ABIM's copyright in its Gastroenterology Examination – and accordingly awarded ABIM copyright infringement damages – it also found that the affirmative defense of merger applied to some small portion of ABIM's copyright claim.  (*See* Mot. at 14-16.)

As ABIM demonstrated in its response to Dr. Von Muller's earlier motion on this subject (Doc. No. 149) – which ABIM incorporates and therefore only summarizes herein – the verdict in fact reveals that the jury credited Dr. Von Muller's affirmative defense of merger in its damage award to the extent it deemed appropriate in its discretion and consistent with the Court's instructions and the law.  Thus, there is no basis to conclude that the jury was confused about the application of the merger doctrine or that the jury did not follow the Court's instructions.  (*See* id.)  Nor is there any need, as Dr. Von Muller suggests (Mot. at 15), to engage in "speculation and conjecture" to "rationalize" the jury's verdict.

Under the merger doctrine, "[w]hen the idea and the expression of the idea coincide, then the expression will not be protected in order to prevent creation of a monopoly on the underlying 'art.'"  Educ. Testing Servs., 793 F.2d at 539.  With regard to copyright protection for standardized testing materials in particular – such as the copyrighted ABIM Gastroenterology Examination at issue here – "[t]eaching the legal principles tested . . . is permissible[, but] [d]oing so using the same fact patterns, prompts, and answer-choice combinations found [in a copyright protected work] is not."  Nat'l Conference of Bar Examiners, 458 F. Supp. 2d at 259; *see also* Doc. No. 149 at 4-5.

ABIM submitted to the jury that Dr. Von Muller infringed its copyright for fifty separate questions that appeared on the November 2008 Gastroenterology Examination.  The jury's verdict clearly shows that in accordance with the Court's instructions and consistent with applicable law, the jury analyzed each ABIM question in conjunction with the questions that Dr. Von Muller disclosed to Dr. Arora to determine whether each of Dr. Von Muller's questions constituted an act of infringement.  *See* Educ. Testing Servs., 793 F.2d at 539 (holding that a copyright registration for a secure test covered the individual copyrightable questions therein, and noting, in rejecting a merger defense, that the plaintiff could "devise questions designed to test . . . concepts [*i.e.*, rules of punctuation, analogies, vocabulary or other fundamental elements of English composition] and secure valid copyrights on these questions"); Nat'l Conf. of Bar Examiners, 458 F. Supp. 2d at 259 (analyzing individual bar exam questions for applicability of copyright protection).  With respect to a significant number of questions, the jury found that Dr. Von Muller infringed ABIM's copyright and thus specifically awarded ABIM copyright infringement damages of $82,446.  The verdict further shows that the jury concluded that for a very small number of other questions, Dr. Von Muller was not liable for copyright infringement under the doctrine of merger, but that she was liable to ABIM for $8,668 for breaching her confidentiality agreement with ABIM by disclosing "[a] portion of the material contained" in those ABIM questions to Dr. Arora.

Contrary to Dr. Von Muller's suggestion, a finding that the merger doctrine applied to some of ABIM's examination questions did not require that the jury find for Dr. Von Muller with respect to every act of infringement.  Rather, the jury's damages award is consistent with its appropriate finding that Dr. Von Muller's affirmative defense of merger applied only to a small number of ABIM's Gastroenterology Examination questions.

9

Moreover, the jury's award is fully consistent with the merger doctrine because nearly all of the ABIM questions that Dr. Von Muller infringed contain fact patterns, prompts, and answer choices that together, in each instance, constitute only one of many possible formulations of a question designed to test a specific teaching point.  As the jury correctly found, the merger doctrine could not possibly apply to such unique ABIM examination questions.  (*See* Doc. No. 149 at 6-7 (citing cases and pertinent portions of the record).)

Thus, the jury's finding that the merger doctrine applied to a small portion of ABIM's copyright claim does not evidence jury confusion and is not a basis for a new trial.

**D.  Dr. Von Muller's Motion For New Trial Fails Because The Court Made No Errors Of Law, Much Less Any Prejudicial Errors Of Law**

**1.  The Court Properly Permitted Dr. Katzka To Testify**

Dr. Von Muller contends that the Court erred in denying her motion *in limine* to preclude the testimony of Dr. Katzka and her motion for reconsideration of that decision.  (*See* Mot. at 16-18.)  She had argued that Dr. Katzka was an improper expert witness.  But as ABIM set forth at length in its response to Dr. Von Muller's motion *in limine* (Doc. No. 111) – which response ABIM incorporates and therefore only summarizes herein – the motion was untimely and legally baseless.

The untimeliness alone was a sufficient basis for denying the motion *in limine*. Indeed, Dr. Von Muller had been aware more than two months prior to the Court's deadline for motions *in limine* that ABIM intended to call Dr. Katzka to testify about the development of ABIM's gastroenterology examination questions and Dr. Von Muller's unlawful copying and misappropriation of those questions.  (*See* Doc. No. 111 at 2-4 (citing the parties' joint pretrial memorandum, correspondence between counsel, and ABIM's supplemental disclosures, all of which identified Dr. Katzka as a witness and long predated Dr. Von Muller's motion).)  Yet, Dr.

10

Von Muller did not file her motion until six days before trial.  (*See* Doc. No. 106.)  Her disregard for the Court's deadlines was itself a sufficient basis to deny her motion.  (*See* Doc. No. 111 at 4 (citing cases).)  Moreover, particularly given that Dr. Katzka was a critical witness for ABIM, granting Dr. Von Muller's untimely motion on the eve of trial would have caused ABIM severe prejudice.  (*See* id. at 4-5.)

In any event, Dr. Von Muller's motion to preclude Dr. Katzka's testimony was legally deficient because contrary to Dr. Von Muller's contention, Dr. Katzka testified as a fact witness, not as an expert.  Dr. Katzka was the physician-secretary for ABIM's gastroenterology test committee from 2004 to 2010.  (Feb. 27, 2012 Trial Tr. at 10:15-18.)  Accordingly, he had personal, in-depth knowledge of the questions that appeared on Dr. Von Muller's 2008 Certifying Examination in Gastroenterology because he wrote, edited, reviewed, and selected the questions that appeared on the examination.  (*See, e.g.*, Feb. 27, 2012 Trial Tr. at 11:6 – 12:4.)  Based on his personal knowledge of the questions on Dr. Von Muller's ABIM examination, Dr. Katzka testified that the questions that Dr. Von Muller sent to Dr. Arora are questions from her ABIM examination.  (*See generally* Feb. 27, 2012 Trial Tr. at 27:9 – 171:5.)  He also testified about ABIM's creation of the questions that appeared on Dr. Von Muller's 2008 examination. (*See generally* id.; *see also, e.g.*, Feb. 27, 2012 Trial Tr. at 14:6 – 17:23.)

Because Dr. Katzka's testimony derived from his firsthand experience as a member of ABIM's gastroenterology test committee, it was proper lay testimony under Rules 602 and 701 of the Federal Rules of Evidence.  *See, e.g.*, U.S. v. Kale, 445 F. App'x 482 (3d Cir. 2011) (holding that a phone company employee had sufficient personal knowledge of how cell phone towers worked, based on his experience, to testify reliably as a lay witness on the subject); *see also* Doc. No. 111 at 5-8 (citing cases).

11

Dr. Katzka's lay testimony was particularly appropriate in the context of ABIM's claims that Dr. Von Muller stole ABIM's copyrighted and secure examination questions and Dr. Katzka's unique and intimate familiarity with those same questions.  As courts within the Third Circuit and elsewhere have recognized in intellectual property disputes, witnesses who were involved in the creation of intellectual property are ideally positioned to provide relevant fact testimony concerning its infringement.  *See, e.g.*, Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1374 (5th Cir. 1981) (upholding trial court's decision in a copyright infringement action allowing the author of a copyrighted work to testify as a lay witness regarding similarities between his book and the defendant's movie because "[t]he plaintiff author . . . was in a unique position of being intimately familiar with the allegedly infringed work"); Irise v. Axure Software Solution, Inc., No. 08-03601, 2009 WL 3615075, at *30 n.10 (C.D. Cal. Sept. 11, 2009) ("[C]ourts regularly allow lay witnesses, specifically the creators of particular products or inventions, to testify with regard to their personal knowledge of the particular invention.") (internal citations and quotations omitted); Forest Labs., Inc. v. IV AX Pharm., Inc., 237 F.R.D. 106, 114-15 (D. Del. 2006) (holding in a patent infringement action that a doctor who participated in research concerning a drug's effects could testify about his research and his surprise at its results because his firsthand knowledge rendered his testimony reliable); Agere Sys., Inc v. Atmel Corp., No. 02-864, 2005 WL 6728524, at *1 (E.D. Pa. Feb. 24, 2005) (denying motion to exclude lay testimony of defendant's in-house engineer concerning process at issue in patent infringement case).  Despite having ABIM's prior response to this argument, Dr. Von Muller does not even try to address these cases.  (*See* Mot. at 16-18.)

Accordingly, the Court had ample basis for its denial of Dr. Von Muller's motions to preclude Dr. Katzka's testimony.

2.    **The Court Properly Denied Dr. Von Muller's Request To *Voir Dire* Dr. Katzka**

The Court also acted well within its discretion in denying Dr. Von Muller's request to *voir dire* Dr. Katzka.  Nevertheless, Dr. Von Muller argues that this denial was so prejudicial as to warrant a new trial.  (*See* Mot. at 18-19.)

As a threshold matter, Dr. Von Muller does not and cannot identify the alleged prejudice that resulted from her inability to *voir dire* Dr. Katzka.  In other words, she does not and cannot say what would or could have turned out differently if she had that opportunity.

In any event, Dr. Von Muller does not and cannot point to any authority granting her a right to *voir dire* Dr. Katzka.  In fact, the Federal Rules of Evidence and standard trial practice contemplate the opposite – that is, information about a witness's qualifications and the basis of his knowledge is elicited on direct examination and subject to challenge on cross-examination.  *See, e.g.*, Fed. R. Evid. 104 (providing that hearings on preliminary matters with respect to witnesses should be held only if the admissibility of a confession is in question, a witness who is an accused requests the hearing, or if the interests of justice require); Advisory Cmte. Notes, Fed. R. Evid. 104 (noting that the determination whether justice requires *voir dire* is within the discretion of the trial judge); *see also* Mueller and Kirkpatrick, Fed. Evid., § 6:67 (3d ed. 2011) (preliminary questioning "is quickly and readily handled on direct" and "[i]f the trial court thinks the foundation is adequate, the adverse party is usually told to 'wait until your cross examination'").

This was precisely the procedure the Court and the parties followed at trial.  In denying Dr. Von Muller's request for *voir dire*, the Court noted that "[t]he defense [would] have an adequate opportunity to cross-examine the witness on his qualifications and his basis for his testimony during their cross-examination."  (Feb. 27, 2012 Trial Tr. at 2:12-18.)  Indeed, Dr.

13

Von Muller's counsel aggressively cross-examined Dr. Katzka over the course of two days, including with in-depth questioning as to Dr. Katzka's background, qualifications, and experience on the ABIM gastroenterology test committee.  (*See generally* Feb 27, 2012 Trial Tr. at 172:3 – 288:18; Feb. 28, 2012 Trial Tr. 3:3 – 109:7.)  Thus, Dr. Von Muller had the appropriate opportunity to mitigate any alleged "prejudice" (*see* Mot. at 18) that she suffered from testimony that was unfavorable to her.

In addition, Dr. Von Muller's suggestion that the Court "compounded" the prejudice when it allowed ABIM to *voir dire* Dr. Von Muller's accountant, Celia Thompson (Mot. at 18-19), cannot withstand scrutiny.  The *voir dire* of Ms. Thompson, of course, took place outside the presence of the jury.  (*See* March 1, 2012 Trial Tr. at 107:7-13.)  And, Dr. Katzka and Ms. Thompson testified under very different circumstances.  For example, whereas ABIM properly identified Dr. Katzka as a lay witness in its Supplemental Initial Disclosures, Dr. Von Muller never identified Ms. Thompson as a witness in her Initial Disclosures as required by Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure, and she did not even disclose Ms. Thompson's name to ABIM until the parties filed their Joint Pretrial Memorandum, thus denying ABIM any opportunity to take discovery about her background or experience, or the basis for her testimony.  (*See* Doc. No. 71-2 at 20-21.)  Moreover, Dr. Von Muller ***never*** produced any calculation of damages, whether prepared by Ms. Thompson or anyone else, in violation of Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure.  In fact, until Ms. Thompson took the stand, ABIM – and even Ms. Thompson herself – had no idea what she would testify about Dr. Von Muller's claimed damages.  (*See, e.g.*, March 1, 2012 Trial Tr. at 117:20 – 120:10.)  And, through the time of trial, it was entirely unclear – particularly given Dr. Von Muller's representations that Ms. Thompson would testify about future damages projections – whether Dr.

Von Muller intended to present Ms. Thompson as an expert or lay witness.  (*See, e.g.*, March 1, 2012 Trial Tr. at 4:11-14 (noting that the Court permitted ABIM an opportunity for *voir dire* because Dr. Von Muller intended to present evidence of projected losses for the first time at trial).)  Thus, the "uneven treatment" that Dr. Von Muller complains about (Mot. at 18-19) was entirely justified, and in any event her lack of an opportunity to *voir dire* Dr. Katzka was not an error, much less an error that warrants a new trial.

### 3.     ABIM Did Not Improperly Rely On Hearsay In E-mails Between Dr. Von Muller And Dr. Arora

Dr. Von Muller's argument that that she is entitled to a new trial because the Court improperly permitted ABIM to rely on hearsay rests on the false premise that "virtually the only basis for ABIM's claims" was formed by "many hearsay e-mails between Dr. Arora and Dr. Von Muller."  (Mot. at 19.)  As an initial matter, it is simply not true that this supposed hearsay evidence "was offered as ABIM's proof that Dr. Von Muller purchased actual exam questions, i.e., breached a contract with ABIM and committed copyright infringement, and disseminated actual exam questions, i.e., breached a contract with ABIM and committed copyright infringement."  (Mot. at 20.)  The documentary proof that Dr. Von Muller copied and disclosed ABIM examination questions was Dr. Von Muller's Questions Document – a document that she admittedly drafted.  (*See* Feb. 23, 2012 Trial Tr. at 99:8 - 100:1; Trial Ex. P-14.)  And the documentary proof that Dr. Von Muller purchased actual examination questions consisted of, among other things, the comparison document that she prepared to support her argument that she derived the questions in her Questions Document from the questions she had purchased from Dr. Arora, and not from her ABIM examination.  (*See* Feb. 23, 2012 Trial Tr. at 122:11 – 123:23; Trial Ex. P-396.)

In addition, while Dr. Von Muller purports to complain about "many" e-mails, she discusses only one e-mail in her motion – *i.e.*, the e-mail in which Dr. Arora wrote:

> My collection from previous GI exams includes 41 pages of material containing over 150 actual questions and my answers with some references.  The total cost is $480 + your promise to send some questions soon after the exam.  If you wish, you can join forces with me to give GI conference on the same next year.

(*See* Mot. at 20 (referring to Trial Ex. P-19).)  Contrary to Dr. Von Muller's suggestion (Mot. at 19-20), ABIM did not offer this e-mail for the truth of the matter asserted therein.  Rather, ABIM questioned Dr. Von Muller about the e-mail and what, in light of the e-mail, she understood to be purchasing from Dr. Arora and what she understood the terms of the purchase to be.  (Feb. 23, 2012 Trial Tr. at 82:9 – 83:11.)  Dr. Von Muller then had the opportunity to testify about the e-mail on direct examination.  (*See* Feb. 24, 2012 Trial Tr. at 46:22 – 49:2.)

Indeed, Dr. Von Muller herself relied on this very same e-mail to argue that she intended to teach a board review course with Dr. Arora.  (*See* Feb. 24, 2012 Trial Tr. at 47:8 – 53:7.)  To that end, Dr. Von Muller stipulated to the substance of the e-mail in the parties' Joint Pretrial Memorandum, which thus provides in the Statement of Undisputed Facts that "Dr. Arora . . . offered to 'join forces' with Dr. Von Muller to 'give GI conference . . . next year.'"  (Doc. No. 62 at 6 (quoting the e-mail; second ellipsis in original).)  Accordingly, Dr. Von Muller has admitted the truth of the very same e-mail she attacks as hearsay.  *See* Agere Sys. Inc. v. Advanced Environmental Tech. Corp., 602 F.3d 204, 233 n.39 (3d Cir. 2010) (noting that a party's reliance on out-of-court statements may constitute an adoptive admission of those statements); Fed. R. Evid. 801(d)(2)(B) (a statement is not hearsay if it is offered against a party who has manifested an adoption or belief in its truth).  Dr. Von Muller cannot have it both ways.

For all these reasons, the e-mail was not inadmissible hearsay and Dr. Von Muller suffered no prejudice from its admission.  Moreover, even if the e-mail did contain hearsay, any

16

error in allowing it into evidence would have been harmless because ABIM evinced substantial

other evidence establishing that Dr. Von Muller copied questions from her Gastroenterology

Examination and disclosed them to Dr. Arora after her ABIM examination, and that she thereby

infringed ABIM's copyright and breached her confidentiality agreement.

### 4.    The Court Properly Excluded Evidence Of ABIM's Settlement With Arora Board Review

Dr. Von Muller contends that the Court's June 2011 denial (Doc. No. 51) of her

motion to compel ABIM's production of its settlement agreement with Arora Board Review was

a prejudicial legal error because it "effectively permitted ABIM to receive double recovery" for

compromised examination questions.  (Mot. at 22.)  This argument fails today for the same

reasons it did the first time.  Accordingly, ABIM incorporates herein its response to Dr. Von

Muller's motion to compel.  (*See* Doc. 46 at 17-20.)  As set forth in ABIM's earlier response, the

settlement agreement was inadmissible for two independent reasons.

First, the settlement agreement was not responsive to Dr. Von Muller's discovery

requests.  (*See* id. at 17-18 (citing and discussing Dr. Von Muller's requests).)  Dr. Von Muller

makes no effort in her instant Motion to argue that her discovery requests called for production

of the settlement agreement.  (*See* Mot. at 21-22.)

Second, the settlement agreement is irrelevant to ABIM's damages under Rule

408 of the Federal Rules of Evidence, which bars the use of settlement agreements to establish

damages.  Rule 408, which Dr. Von Muller disregards, provides that a settlement agreement is

not admissible to prove the amount of a disputed claim.  *See* Fed. R. Evid. 408(a); Dent v.

Westinghouse, Civ. No. 08-83111, 2010 U.S. Dist. LEXIS 84, at *6-7 (E.D. Pa. Jan. 4, 2010)

(denying motion to compel production of settlement agreements because Rule 408 prohibits the

use of such agreements to establish damages).

The "one satisfaction" rule on which Dr. Von Muller rests her entire argument (*see* Mot. at 21-22) is inapplicable here.  That rule only bars a plaintiff, after its judgment has been marked as satisfied against one tortfeasor, from bringing a second suit against a joint tortfeasor for the same harm.  *See* Brandt v. Eagle, 602 A.2d 1364, 1367 (Pa. Super. Ct. 1992); Hilbert v. Roth, 149 A.2d 648, 652 (Pa. 1959) ("When the plaintiff has [a judgment] marked satisfied of record, the common law assumption that he is satisfied may reasonably be permitted to operate.").  When a judgment is not adjudicated on the merits, courts may not employ the "one satisfaction" rule's conclusive presumption that the plaintiff has received full satisfaction for its injuries.  *See* Greenleaf v. Garlock, Inc., 174 F.3d 352, 357 n. 3 (3rd Cir. 1999).  Thus, as the Third Circuit has specifically held, the "one satisfaction" rule does not bar a suit in the circumstances presented here – *i.e.*, when a plaintiff (ABIM) settles with one defendant (Dr. Arora) and then sues another defendant (Dr. Von Muller) in the absence of a release discharging all tortfeasors.  *See* Frank v. Volkswagenwerk, 522 F.2d 321, 327 (3rd Cir. 1975).

Accordingly, the Court's denial of Dr. Von Muller's motion to compel production of the settlement agreement was proper and does not provide a basis for a new trial.

### 5.    The Court's "Attitude" Toward Dr. Von Muller's Counsel Does Not Warrant A New Trial

Nothing in the record even remotely supports Dr. Von Muller's contention (Mot. at 22-24) that the Court's "attitude" toward her counsel warrants granting a new trial.

"The moving party must meet a heavy burden to prevail on the ground of judicial misconduct."  Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 692 F. Supp. 2d 487, 522 (M.D. Pa. 2010) (quoting Wright, Miller & Kane, Federal Prac. & Proced. § 2809).  To warrant a new trial, a judge's conduct or comments must "confuse or mislead the jury, or become so one-sided as to assume an advocate's position."  Id. (quoting Am. Home Assurance Co. v. Sunshine

18

Supermarket, Inc., 753 F.2d 321, 327 (3d Cir. 1985)).  Thus, the Court must examine "the

materiality of the comment, its emphatic or overbearing nature, the efficacy of any curative

instruction, and the prejudicial effect."  Berger v. Zeghibe, No. 11-1087, 2012 WL 580653 (3d

Cir. Feb. 23, 2012) (quoting United States v. Olgin, 745 F.2d 263, 268 (3d Cir. 1984)).

          The comments Dr. Von Muller cites in her Motion are little more than stray

innocuous remarks and rulings on disputed issues.  For example, she points to the Court's

decisions permitting ABIM to *voir dire* Ms. Thompson and not permitting Dr. Von Muller to

*voir dire* Dr. Katzka.  (Mot. at 22.)  As discussed above (at pp. 13-15), those decisions were

entirely proper, not unfairly prejudicial.  Moreover, unfavorable rulings are inherently

"prejudicial," but they are not unfair.  *See, e.g.*, Dukes v. Lancer Ins. Co., No. 08-4948, 2009 WL

4609598, at *1 (D.N.J. Dec. 4, 2009) ("'Judicial rulings alone almost never constitute a valid

basis for a bias or impartiality motion.'") (quoting Liteky v. United States, 510 U.S. 540, 555

(1994)).  And, even if they were prejudicial – which they were not – a handful of stray remarks

over the course of a 12-day trial would not be materially prejudicial.[4]  *See* Berger, 2012 WL

580653, at *5 ("[C]onsidering the fact that the comments comprise an exceptionally small

portion of the voluminous record that this two-week trial produced, we think it evident that the

District Court's comments did not have the influence [appellants] attribute to them."); United

States v. Beaty, 722 F.2d 1090, 1094-95 (3d Cir. 1983) ("The sheer length of this two week trial

makes us cautious about investing any but the most inflammatory isolated statements with

---

[4]      Ironically, the one specific incident that Dr. Von Muller harps on – which arose from Dr.
Von Muller's counsel publishing to the jury on the courtroom monitors documents that
had not been admitted into evidence (*see* Mot. at 23), which they did more than once
(*see, e.g.*, Feb. 23, 2012 Trial Tr. at 13:23 – 15:22; 29:5-17) – was, if anything,
prejudicial **to ABIM**, not to Dr. Von Muller.

19

critical importance.  We do not believe that a few summary questions or intemperate remarks assumed the same importance in the jury's mind as they naturally have in counsel's.").

Thus, the Court's conduct at trial is not a basis for granting a new trial.

> **6.  Whether The Exclusion Of Evidence Of Alleged Payments From VIP Endoscopy To Dr. Von Muller's Medical Practice Was Proper – Which It Was – Is Irrelevant Because The Jury Separately Found No Basis For Liability On Dr. Von Muller's Counterclaims**

Putting aside whether the Court properly excluded evidence of alleged payments made from VIP Endoscopy, Inc. ("VIP"), a business owned by Dr. Von Muller's husband, to Dr. Von Muller's medical practice – which it did, as ABIM discusses below – the ruling could in no event warrant a new trial because:  (i) the Court entered judgment for ABIM and the individual counterclaim defendants on Dr. Von Muller's tortious interference counterclaims on grounds unrelated to damages (*see* § II(D)(7), *infra*); and (ii) the jury specifically found that no counterclaim defendant engaged in any conduct that could give rise to liability under Dr. Von Muller's counterclaims for commercial disparagement/injurious falsehood, defamation, or false light/invasion of privacy (*see* Verdict Slip, Doc. No. 146, ¶¶ 13-14, 16-17, 19-20).  On this basis alone the Court should deny Dr. Von Muller's request for a new trial on this ground.

In any event, the Court's ruling was correct.  It is undisputed that Dr. Von Muller does not own VIP.  (*See, e.g.*, Mot. at 24.)  As ABIM and the individual counterclaim defendants argued in their motion *in limine* to preclude evidence of alleged damage to VIP, it is black letter law that a plaintiff cannot claim pecuniary loss based upon the loss of a corporation that she does not own; such a claim belongs solely to the corporation.  Thus, Dr. Von Muller could not seek damages for alleged harm to VIP.  (*See* Doc. No. 71-2 (motion *in limine*) at 9-11 (citing cases); Doc. No. 90 (reply for motion *in limine*) at 4-9 (citing cases); Feb. 21, 2012 Trial Tr. at 32:22 – 35:9 (hearing on motion *in limine*).)

Dr. Von Muller sought to evade this restriction by arguing that even though she did not own VIP, she controlled its funds.  (*See, e.g.*, Feb. 21, 2012 Trial Tr. at 33:12 – 35:9.) She admitted that she disregarded VIP's corporate formalities and commingled funds among her practice and VIP.  (*See, e.g.*, Mot. at 24-25; Doc. No. 87 (response to motion *in limine*) at 6-9.) At trial, her accountant testified that Dr. Von Muller used funds from Dr. Von Muller's practice to pay the salaries of VIP's employees, and that VIP then made reimbursement payments to Dr. Von Muller's practice.  (March 1, 2012 Trial Tr. at 145:25 – 154:2.)  Dr. Von Muller tried to present those reimbursement payments as evidence pertinent to her claimed damages.  But the accountant acknowledged that she could not distinguish what, if any, portion of those payments constituted income of Dr. Von Muller, and Dr. Von Muller presented no evidence to show that any portion of the payments were income to her.  (*See* March 1, 2012 Trial Tr. at 145:25 – 154:2.)  Accordingly, the Court properly excluded evidence of payments made by VIP, and under no circumstances does this ruling constitute error that warrants a new trial.

### 7.    The Court Properly Granted Judgment As A Matter Of Law To ABIM And The Individual Counterclaim Defendants On Dr. Von Muller's Tortious Interference Claim

The Court granted ABIM's motion for judgment as a matter of law on Dr. Von Muller's tortious interference counterclaim (Doc. No. 135) because at trial, and "looking at [Dr. Von Muller's] evidence in its most favorable light," Dr. Von Muller "failed to demonstrate any actual or prospective business relationship that has been violated by any third party."  (March 2, 2012 Trial Tr. at 188:7-23; *see also* id. at 182:4-14.)  The Court thus properly applied Pennsylvania law:  the Pennsylvania Supreme Court has adopted Section 766 of the Restatement (Second) of Torts, which provides that a tortious interference claim requires the plaintiff to prove, among other things, that "the defendant interfered with the performance of [a] contract by inducing a breach or otherwise causing the third party not to perform."  Al Hamilton Contracting

21

Co. v. Cowder, 644 A.2d 188, 191 (Pa. Super. Ct. 1994); *see also* Thompson Coal Co. v. Pike

Coal Co., 412 A.2d  466, 470-71 (Pa. 1979); Doc. No. 135 at 3.

      Dr. Von Muller argues here that the Court's ruling was in error because she

supposedly had adduced evidence that ABIM caused two third parties to breach contracts with

her:  her hospital and the federal government as the administrator of the Medicare program.  She

is wrong about both.

      Dr. Von Muller's contention that "St. Francis Hospital broke an existing contract

it had with her" after it learned of ABIM's suspension of her Board Certification in June 2010 is

a blatant mischaracterization of the record evidence and her own testimony.  Indeed, the

evidence demonstrated that St. Francis Hospital South **did not** terminate her hospital privileges;

to the contrary, it ***reappointed*** her to its medical staff in September 2010.  (*See* Trial Ex. P-392

(letter from St. Francis Hospital South to Dr. Von Muller, dated Sept. 28, 2010).)  And Dr. Von

Muller had no choice but to concede at trial that no hospital terminated any contact with her.

(*See* March 2, 2012 Trial Tr. at 45:24 – 48:13.)  Thus, her counsel's representation here that she

"clearly testified that . . . St. Francis Hospital broke an existing contract it had with her" (Mot. at

27) not only cannot support her request for a new trial, but also violates Rule 11.

      Dr. Von Muller's assertion that her supposed understanding of Medicare

regulations constitutes evidence of breach of a third party contract (Mot. at 27) also is wrong as a

matter of law and fact.  As a threshold matter, Dr. Von Muller does not, because she cannot, cite

any evidence that Medicare terminated a contract with her.  There is none.  Rather, the sole basis

for her contention is the following testimony:  "I know that from having gone through this before

with Saint Francis South and having pulled all my insurance contracts and looked at them, I

knew that I would be in violation of these contracts, and that I might even be subjected to

criminal charges if I continued to practice."  (*See* Mot. at 27 (quoting March 1, 2012 Trial Tr. at 260:4 – 260:10).)  In other words, Dr. Von Muller contends that ABIM allegedly impeded her performance of a contract, not that any third party terminated a contract with her.

     Even assuming for the sake of argument that Dr. Von Muller was referring to a contract with Medicare, the testimony is insufficient to support a tortious interference claim under Pennsylvania law.  Pennsylvania courts have declined to adopt the provision of the Restatement (Second) of Torts (Section 766A) that provides for a tortious interference claim for interference with a "plaintiff's performance of his own contract, either by preventing that performance or making it more expensive or burdensome."  *See, e.g.*, Philips v. Selig, 959 A.2d 420, 436 n.13 (Pa. Super. Ct. 2008) (noting that interference with plaintiff's performance of a contract "has not been recognized by a Pennsylvania appellate court as the law of this Commonwealth").  Thus, the Third Circuit has expressly and repeatedly rejected Section 766A as a viable ground for relief under Pennsylvania Law.  *See, e.g.*, Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 n.9 (3d Cir. 2009); *see also* Doc. No. 135 at 4-5; March 2, 2012 Trial Tr. at 177:17 – 178:25.

     Moreover, the Third Circuit has made clear that a tortious interference claim cannot accrue under Pennsylvania law until the plaintiff suffers legal damage – *i.e.*, until the third party terminates a contract.  *See* CGB Occupational Therapy v. RHA Health Servs., 357 F.3d 375, 384 (3d Cir. 2004) (finding no damage even though the allegedly tortious acts had occurred and the third party had sent a written notice of intent to terminate a contract); *see also* March 2, 2012 Trial Tr. at 176:24 – 177:16.

     Finally, Medicare does not even require a participating physician to be Board Certified.  *See* 42 CFR § 410.20 (setting forth requirements for participation).)  That Dr. Von

Muller would reassert her Medicare argument even after ABIM made this point at trial only underscores her willingness to continue to assert demonstrably incorrect positions and engage in unnecessary litigation.

## III.    CONCLUSION

The Court has already rejected all of the arguments the Dr. Von Muller makes in her Motion – in some cases, it has done so two or three times.  For all the reasons set forth above and in ABIM's prior briefing and oral arguments, the Court's decisions were correct. Accordingly, the Court should deny the Motion.

Respectfully submitted,

Date:  April 23, 2012

/s/ Hara K. Jacobs
Hara K. Jacobs
Paul Lantieri III
Corinne Militello
Nicholas H. Pennington
Pa. Bar ID Nos. 74832, 88160, 205889, 307073
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Tel.       215.665.8500
Fax        215.864.8999
jacobsh@ballardspahr.com
lantierip@ballardspahr.com
militelloc@ballardspahr.com
penningtonn@ballardspahr.com

*Attorneys for American Board of Internal Medicine*

24

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this day I caused to be served a true and correct copy of the foregoing Plaintiff And Counterclaim Defendants' Response In Opposition To Defendant's Renewed Motion for Judgment As a Matter of Law and Motion in the Alternative for a New Trial upon the below-listed counsel by ECF, and such document is available for viewing and downloading from the ECF system:

> Aaron J. Freiwald
> LAYSER & FREIWALD PC
> 1500 Walnut St., 18th Floor
> Philadelphia, PA 19102
>
> *Attorney for Sarah Von Muller, M.D.*

Date:  April 23, 2012                                   /s/ Nicholas H. Pennington
                                                                   Nicholas H. Pennington