IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
AMERICAN BOARD OF INTERNAL      : CIVIL ACTION
MEDICINE                        :
                                :
        vs.                     : NO. 10-CV-2680
                                :
SARAH VON MULLER, M.D.          :
                                :
        vs.                     :
                                :
AMERICAN BOARD OF INTERNAL      :
MEDICINE, CHRISTINE K. CASSEL,  :
M.D., LYNN O. LANGDON, M.D.,    :
and ERIC S. HOLMBOE, M.D.       :
```

## MEMORANDUM AND ORDER

**JOYNER, C.J.**                                    **July    9, 2012**

_____This action is yet again before the Court for resolution of the Renewed Motion of Defendant/Counterclaim Plaintiff for Judgment as a Matter of Law and/or in the Alternative for a New Trial.  For the reasons discussed below, these Motions shall be denied.

### History of the Case

This case originated when the Defendant Counterclaim Plaintiff, Sarah Von Muller, M.D. ("Von Muller") sat for the board certification examination in gastroenterology given by Plaintiff, American Board of Internal Medicine ("ABIM") in November, 2008.  Specifically, Plaintiff alleged that approximately one month before taking the November 2008

examination for board certification in gastroenterology,
Defendant Von Muller purchased actual ABIM gastroenterology exam
questions from Arora Board Review for $480 plus her promise to
provide actual test questions to Arora after she took the
examination.  Given that its examination questions are and were
copyrighted and trade secret-protected, ABIM asserted that in so
doing, Von Muller acted unlawfully in violation of its copyright
and trade secret rights and in breach of the "Pledge of Honesty"
which she signed at the time she took the examination.  The case
was tried over a period of twelve days commencing on February 21,
2012, and resulted in a verdict in favor of ABIM and against Von
Muller in the amount of $91,114.00.

By the motions now before us, Defendant renews the Motion
for Judgment as a Matter of Law which she filed as to all of
ABIM's claims at the close of its case and moves for a New Trial
on the basis of numerous assignments of trial error.

## Standards Governing Motions for Judgment as a Matter of Law and Motions for a New Trial

Fed. R. Civ. P. 50 outlines the principles and procedures
for moving for the entry of judgment as a matter of law and,
under certain circumstances, for conditional rulings on a motion
for a new trial.  Fed. R. Civ. P. 59 typically otherwise
addresses motions for a new trial.  Specifically Rule 50 provides
as follows in pertinent part:

**(a) Judgment as a Matter of Law.**

> **(1) In General.**  If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> **(A)** resolve the issue against the party; and
>
> **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> **(2) Motion.**  A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury.  The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.**  If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  No later than 28 days after the entry of judgment - or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged - the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.  In ruling on the renewed motion, the court may:

> **(1)** allow judgment on the verdict, if the jury returned a verdict;
>
> **(2)** order a new trial; or
>
> **(3)** direct the entry of judgment as a matter of law.

**(c) Granting the Renewed Motion; Conditional Ruling on a Motion for a New Trial.**

> **(1) In General.**  If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by

3

determining whether a new trial should be granted if
the judgment is later vacated or reversed.  The court
must state the grounds for conditionally granting or
denying the motion for a new trial.

    **(2) Effect of a Conditional Ruling.**  Conditionally
granting the motion for a new trial does not affect the
judgment's finality; if the judgment is reversed, the
new trial must proceed unless the appellate court
orders otherwise.  If the motion for a new trial is
conditionally denied, the appellee may assert error in
that denial; if the judgment is reversed, the case must
proceed as the appellate court orders.

**(d) Time for a Losing Party's New-Trial Motion.**  Any motion
for a new trial under Rule 59 by a party against whom
judgment as a matter of law is rendered must be filed no
later than 28 days after the entry of the judgment.

    ...

     Thus, Fed. R. Civ. P. 50 provides an opportunity for a

party to challenge, post-trial, the sufficiency of evidence

evaluated by the jury and generally, a Rule 50 motion should be

granted only if the evidence is not sufficient for a jury

reasonably to find liability.  Brown v. Daniels, No. 06-3429,

2008 U.S. App. LEXIS 18251, 290 Fed. Appx. 467, 470 (3d Cir.

2008)(citing Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153,

1166 (3d Cir. 1993)); Comaper Corp. v. Antec, Inc., Civ. A. No.

05-1103, 2012 U.S. Dist. LEXIS 46761 at *7 - *11 (E.D. Pa. April

2, 2012).  In other words, to prevail on a renewed motion for

judgment as a matter of law following a jury trial, the moving

party "must show that the jury's findings, presumed or express,

are not supported by substantial evidence or, if they were, that

the legal conclusions implied by the jury's verdict cannot in law

4

be supported by those findings." <u>Laboratory Skin Care, Inc. v.
Limited Brands, Inc.</u>, Civ. A. No. 06-601, 2011 U.S. Dist. LEXIS
100786 at *4 (D. Del. Sept. 8, 2011)(quoting <u>Pannu v. Iolab
Corp.</u>, 155 F.3d 1344, 1348 (Fed. Cir. 1998) and <u>Perkin-Elmer
Corp. v. Computervision Corp.</u>, 732 F.2d 888, 893 (Fed. Cir.
1984). "Substantial evidence" is defined as "such relevant
evidence from the record taken as a whole as might be accepted by
a reasonable mind as adequate to support the finding under
review." <u>Id</u>. (quoting <u>Perkin-Elmer</u>, <u>supra</u>.).

In assessing the jury's findings and "as with grants of
summary judgment," the reviewing court must view the evidence in
the light most favorable to the non-moving party, draw all
reasonable inferences in favor of the nonmoving party, though it
must refrain from weighing the evidence, making credibility
determinations or substituting its own version of the facts for
those found by the jury. <u>Eshelman v. Agere Systems, Inc.</u>, 554
F.3d 426, 433 (3d Cir. 2009); <u>Buczek v. Continental Casualty Ins.
Co.</u>, 378 F.3d 284, 288 (3d Cir. 2004); <u>Goodman v. Pennsylvania
Turnpike Commission</u>, 293 F.3d 655, 665 (3d Cir. 2002)(quoting
<u>Reeves v. Sanderson Plumbing Products</u>, 530 U.S. 133, 150, 120 S.
Ct. 2097, 147 L. Ed.2d 105 (2000)). Although judgment as a
matter of law should be granted sparingly, it is appropriate
where "the record is critically deficient of the minimum quantum
of evidence" in support of the verdict. <u>Eshelman</u>, <u>supra</u>. In

this regard, federal courts do not follow the rule that a scintilla of evidence is enough to deny the motion. <u>Comaper</u>, <u>supra</u>. (citing <u>Reeves</u>, 530 U.S. at 150-151).

Under Rule 59, "[t]he court may, on motion, grant a new trial on all or some of the issues - and to any party - as follows:

> **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
>
> **(B)** after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

Fed. R. Civ. P. 59(a). "A motion for a new trial must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(b). A motion for a new trial should be granted where (1) substantial errors occurred in admission or rejection of evidence, and where: (2) the jury's verdict is against the clear weight of the evidence, (3) newly discovered evidence exists that would likely alter the outcome of the trial, (4) improper conduct by an attorney or the court unfairly influenced the verdict, (5) the jury's verdict was facially inconsistent or, (6) the verdict is so grossly excessive or inadequate as to shock the conscience. <u>Goodman</u>, 293 F.3d at 676 (citing <u>Becker v. ARCO Chemical Co.</u>, 207 F.3d 176, 180 (3d Cir. 2000); <u>Comaper</u>, 2012 U.S. Dist. at *10 (citing <u>Suarez v. Mattingly</u>, 212 F. Supp. 2d 350, 352 (D. N.J. 2002)); <u>Marcavage v. Board of Trustees of Temple University</u>, 400

F. Supp. 2d 801, 804 (E.D. Pa. 2005). Determining whether to grant a new trial is within the sound discretion of the trial court. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 101 S. Ct. 188, 191, 66 L. Ed.2d 193 (1980); Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1017 (3d Cir. 1995); Sabinsa Corp. v. Creative Compounds, LLC, Civ. A. No. 04-4239, 2012 U.S. Dist. LEXIS 7460 at *5 (D. N.J. Jan. 23, 2012).

## Discussion

*1. Renewed Motion for Judgment as Matter of Law.*

In support of the within motion, Defendant Dr. Von Muller re-asserts that judgment as a matter of law should have been entered in her favor because ABIM put forth no evidence of actual damages in this case and because ABIM's breach of contract claim should have been stricken as duplicative of its claim for copyright infringement.

*A. Damages Evidence.*

First, Defendant argues that Plaintiff failed to present any evidence that it sustained any *actual* damages as a result of her infringement of the copyrighted test questions or her breach of the honesty pledge.

The Copyright Act of 1976, 17 U.S.C. §101, *et. seq.* protects "original works of authorship fixed in any tangible medium of expression," including literary works, and accords the authors of such works the exclusive rights of publication, copying, and

7

distribution.  Medical Education Development Services, Inc. v. Reed Elsevier Group, PLC, 2008 U.S. Dist. LEXIS 76899 at *14 (S.D. N.Y. 2008).  To prove copyright infringement, a plaintiff must demonstrate ownership of a valid copyright and unauthorized copying of a work's original elements by the defendant.  Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed.2d 358 (1991); Dun & Bradstreet Software Services v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002).

Copyright registration is *prima facie* evidence of the validity and ownership of a copyright which gives rise to a rebuttable presumption of same.  Educational Testing Service v. Katzman, 793 F.2d 533, 543 (3d Cir. 1986); IQ Group v. Wiesner Publishing, Inc., 409 F. Supp. 2d 587, 598 (D. N.J. 2006). Copying is proven by showing access to the work and substantial similarity between the two works.  Dam Things from Denmark v. Russ Berrie & Co., 290 F.3d 548, 561 (3d Cir. 2002)(citing Whelan Associates, Inc. v. Jaslow Dental Lab, Inc., 797 F.2d 1222, 1231 (3d Cir. 1986)).  The standard used to detect substantial similarity is "whether an ordinary lay observer would detect a substantial similarity between the works."  National Conference of Bar Examiners v. Multistate Legal Studies, Inc., 413 F. Supp. 2d 485, 487 (E.D. Pa. 2005)(quoting Association of American Medical Colleges v. Mikaelian, 571 F. Supp. 144, 149 (E.D. Pa.

1983)).  "Substantial similarity does not require verbatim

copying... immaterial variations do not alter the conclusion that

infringing material is substantially similar to copyrighted

material."  Id., (quoting Educational Testing Service v. Simon,

95 F. Supp. 2d 1081, 1088 (C.D. Cal. 1999)).  Accordingly, it may

be "entirely immaterial that in many respects plaintiff's and

defendant's works are dissimilar if in other respects similarity

as to a substantial element of plaintiff's work can be shown."

Medical Development, 2008 U.S. Dist. LEXIS at *32 (quoting

Churchill Livingstone, Inc. v. Williams & Wilkins, 949 F. Supp.

1045, 1055 (S.D. N.Y. 1996)).  However, "the factfinder must

[first] decide whether there is sufficient similarity between the

two works in question to conclude that the alleged infringer used

the copyright work in making his own."  Kay Berry, Inc. v. Taylor

Gifts, Inc., 421 F.3d 199, 209 (3d Cir. 2005)(quoting Whelan

Assoc., Inc. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1232 (3d

Cir. 1986).  "At this stage of the inquiry, expert testimony is

permissible to help reveal the similarities that a lay person

might not ordinarily perceive."  Id.

    Under 17 U.S.C. §504, that portion of the Copyright Act

which addresses damages, "[e]xcept as otherwise provided by this

title, an infringer of copyright is liable for either ... the

copyright owner's actual damages and any additional profits of

the infringer ... or ... statutory damages..."  17 U.S.C.

§504(a)(1), (2).  "The award of the owner's actual damages looks
at the facts from the point of view of the copyright owner; it
undertakes to compensate the owner for any harm he suffered by
reason of the infringer's illegal act."  On Davis v. The Gap,
Inc., 246 F.3d 152, 159 (2d Cir. 2001).  Actual damages may
include both the direct expenses resulting from the copyright
infringement and the loss in the fair market value of the
copyright.  National Conference of Bar Examiners v. Multistate
Legal Studies, Inc., 458 F. Supp. 2d 252, 260 (E.D. Pa. 2006).
In assessing copyright damages, "courts must necessarily engage
in some degree of speculation."  Davis, 246 F.3d at 167 (quoting
Stevens Linen Assoc. v. Mastercraft Corp., 656 F.2d 11, 14 (2d
Cir. 1981)).  So long as the amount of a damages award is based
on a factual basis rather than "undue speculation," "some
difficulty in quantifying the damages attributable to
infringement should not bar recovery."  Id., (citing 4 Melville
B. Nimmer & David Nimmer, *Nimmer on Copyright* §14.02[A], at 14-12
(1999)).  "In cases such as this, involving the infringement of
secure standardized test questions, the loss in fair market value
is appropriately calculated by determining the development costs
for any infringed questions and infringed forms that are retired
because of the compromise."  National Council of Examiners for
Engineering and Surveying v. Cameron-Ortiz, 626 F. Supp. 2d 262,
269 (D. P.R. 2009)(citing ETS v. Katzman, 793 F.2d at 543,

10

"infringement of secure test questions 'renders the materials worthless.'").

Here, we find that, notwithstanding Defendant's arguments to the contrary, Plaintiff presented ample evidence of copyright infringement and that it sustained damages as a result of that infringement.  First, as attested to by ABIM's President and Chief Executive Officer, all of ABIM's examinations are secure examinations given in secured testing centers, registered with the United States Copyright Office, and ABIM does not release its examination questions to the public.  In addition, there was un-rebutted evidence that ABIM goes to great lengths to protect the confidentiality of its examination questions, including requiring all test takers to agree to abide by ABIM's Policies and Procedures and its "Pledge of Honesty," as a pre-condition to taking the examination, thereby promising that they will not disclose, copy or reproduce any part of the material contained in each ABIM examination.  (N.T. 2/22/12, 12-16, 175-183; N.T. 2/28/12, 130-154; Exhibit P-64).

The record likewise contains more than sufficient evidence from which a jury could find that, some ten months after sitting for the gastroenterology certification examination, Defendant unlawfully copied[1] and disseminated ABIM's secure test questions

---

[1]   In this case, while there is no evidence that Defendant photocopied her examination, there is evidence that she "brain-dumped" between 50 and 75 discrete questions from the gastroenterology certification examination which she took in November, 2008.  Stated otherwise, Defendant independently

to Dr. Rajender K. Arora of the Arora Board Review in violation
of ABIM's policies and procedures and the Pledge of Honesty.
(N.T. 2/22/12, 18-22, Exhibits P-14, P-19, P-396).  As a result,
ABIM was caused to remove some 77 questions from its "question
pool," the collection from which ABIM's computers randomly draw
questions for its periodic examinations.  (N.T. 2/24/12, 194-199;
Exhibit P-398).

Inasmuch as ABIM presented extensive testimony on the
process for development of its examination questions and the fact
that it can take as long as several years to develop a suitable
test question, it went on to demonstrate that it sustained actual
damages as a result of Defendant's unlawful appropriation of the
questions presented on Plaintiff's November, 2008
gastroenterology examination.  (N.T. 2/22/12, 51-53, 150-164;
N.T. 2/27/12, 16-22; Exhibit P-275).  For example, Rebecca
Lipner, ABIM's Vice President of Psychometrics[2] and Research
Analysis, testified that the test development department spent
some 131 hours investigating Defendant's activities *vis-a-vis* the
November, 2008 gastroenterology examination and Lynn Langdon
noted that the gastroenterology test committee was compelled to

---

recalled the details of this number of examination questions and transmitted
that information to Dr. Arora with the understanding that he would use it in
his future board review courses. (See, e.g., N.T. 2/23/12, 24-26).

    [2]  Dr. Lipner described Psychometrics as "the science of testing.
There's a whole science behind studying whether [a] test is actually effective
or not."  (N.T. 2/22/12, p. 144).

meet three times in 2011, rather than the customary two because it needed to replace the questions compromised by Dr. Von Muller and Dr. Arora. (N.T. 2/23/12, 33; N.T. 2/28/12, 201-203).

Finally, Vincent Mandes, ABIM's Chief Financial Officer and a Senior Vice President, testified at length as to the damages which ABIM sustained as a consequence of the compromised questions. According to Mr. Mandes, after taking into consideration all of the costs attributable to the investigation, which included the time and efforts undertaken by its own employees as well as outside contractors such as Cyveillance, and the expenses relative to having the GI test committee create new questions to replace those lost, it will cost ABIM some $3,926 per question or at least $196,300 to restore its questions pool.[3] (N.T. 2/29/12, 35-39, 64-74; Exhibit P-56). Thus, we find that the plaintiff produced a sufficient quantum of evidence to justify the submission of its claims for damages to the jury and we see no reason to reverse this decision.[4] Defendant's renewed motion for judgment as a matter of law as to all claims and motion for new trial on the grounds that Plaintiff's claims for

---

[3] These calculations are, according to Mandes, conservative estimates insofar as they are based upon 2010 rates. (N.T. 2/29/12, 40, 73-74).

[4] While ABIM does not dispute that, with the exception of the January 2012 meeting of the test committee, it has yet to incur any other expenses relative to the replacement of the compromised questions, we cannot agree with Defendant's contention that this equates to a failure on Plaintiff's part to show damages. Indeed, the record is replete with evidence that the questions must and will be replaced and of the expenses attendant to ABIM's conducting of its investigation into which questions were compromised and by whom. (N.T. 2/29/12, 90-94).

copyright infringement and breach of contract should have been stricken for failure to prove damages are denied.

   B.  *Contract Claim Not Duplicative of Copyright Infringement*

   In this motion, Defendant again asserts that Plaintiff's breach of contract claim should have been stricken because it was subsumed and preempted by its claim for copyright infringement. We disagree.

   "The Copyright Act contains a provision explicitly stating that all common law or state law rights that are equivalent to the rights available under copyright protections are preempted." Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey, 497 F. Supp. 2d 627, 650 (E.D. Pa. 2007).  This provision, codified at 17 U.S.C. §301(a) provides the following in pertinent part:

> (a) ... [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [17 U.S.C. §106] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 ..., whether published or unpublished, are governed exclusively by this title.  ... [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

Thus, "[t]he Copyright Act preempts state common law or statutory claims that fall within the subject matter of copyright, and that create rights equivalent to any of the exclusive rights created by copyright law."  Brown v. Suburban Life Publishing, LLC, Civ. A. No. 10-245, 2011 U.S. Dist. LEXIS 41632 at *15 (E.D. Pa. April

14

15, 2011); Harris v. Winfrey, Civ. A. No. 10-5655, 2011 U.S. Dist. LEXIS 28869 at *10 (E.D. Pa. March 18, 2011)(both citing Orson v. Miramax Film Corp., 189 F.3d 377, 382 (3d Cir. 1999)).

"In order for a state common law or statutory claim to be preempted by the Copyright Act, the Defendant must demonstrate that (1) the work in question falls within the type of works protected by the Copyright Act; and (2) the state law seeks to enforce rights that are equivalent to any of the exclusive rights of copyright found in Section 106 of the Copyright Act." Tegg Corporation v. Beckstrom Electric Co., 650 F. Supp. 2d 413, 420 (W.D. Pa. 2008)(quoting Tartan Software, Inc. v. DRS Sensors & Targeting Systems, Inc., Civ. A. No. 06-1147, 2007 U.S. Dist. LEXIS 75657 at *4 (W.D. Pa. Oct. 11, 2007)). "Essentially, 'if a state created right is 'within the general scope of copyright, 'it is subject to preemption, even if the precise contours of the right differ from any of those conferred by Section 106 of the Copyright Act.'" Id. (quoting 1 MELVILLE B. NIMMER and DAVID NIMMER, *NIMMER ON COPYRIGHT,* §1.01(b)(1)).

In ascertaining whether a claim is either functionally equivalent to or qualitatively different from a right protected by the Copyright Act, the U.S. Court of Appeals for the Third Circuit employs what has come to be known as the "extra element test," a test that was first articulated by the First Circuit Court of Appeals in Data General Corp. v. Grumman Systems Support

Corp., 36 F.3d 1147 (1st Cir. 1994).  Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc., 307 F.3d 197, 217 (3d Cir. 2002).  Under that test, "if a state cause of action requires an extra element beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action."  Id. (quoting Data General, at 1164); Healthcare Advocates, supra.  Insofar as "courts have taken a 'restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim, ... [n]ot every extra element is sufficient to establish a qualitative variance between rights protected by federal copyright law and that by state law."  The Scranton Times, L.P. v. The Times Partner, LLC, Civ. A. No. 3:08-cv-2135, 2009 U.S. Dist. LEXIS 17278 at *8 (M.D. Pa. March 6, 2009)(quoting Daley v. Firetree, Ltd., Civ. A. No. 4: CV-04-2213, 2006 U.S. Dist. LEXIS 4061 at *6-7 (M.D. Pa. Jan. 19, 2006 and Data General, 36 F.3d at 1164).

    Of course, to state a claim for breach of contract, a plaintiff must establish the following elements: (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.  Frederico v. Home

Depot, 507 F.3d 188, 203 (3d Cir. 2007); Ware v. Rodale Press, Inc., 322 F.3d 218, 225-226 (3d Cir. 2003).  Although not a bright-line rule, the vast majority of courts in this circuit and elsewhere "that have addressed the issue of contracts and preemption [under Section 301 of the Copyright Act] have found that the rights protected by breach of contract claims are not the same as copyright rights."  MCS Services, Inc. v. Raleigh Johnsen, Civ. A. No. 01-CV-4430, 2002 U.S. Dist. LEXIS 16910 at *21, n.2 (E.D. Pa. Aug. 13, 2002)(citing, *inter alia,* Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 210 F. Supp. 2d 552 (D. N.J. 2002); Operating System Support, Inc. v. Wang Laboratories, Inc., Civ. A. No. 98-2138, 2001 U.S. Dist. LEXIS 24689 (D. N.J. April 21, 2001), *rev'd on other grounds*, 52 Fed. Appx. 160, 2002 U.S. App. LEXIS 15650 (3d Cir. 2002); Expediters Int'l of Wash., Inc. v. Direct Line Cargo Mgmt. Services, Inc., 995 F. Supp. 468, 483 (D. N.J. 1998); Architectronics, Inc. v. ControlSystems, Inc., 935 F. Supp. 425, 439 (S.D. N.Y. 1996)); County of Delaware v. Government Systems, Inc., 230 F. Supp. 2d 592, 600, n. 11 (E.D. Pa. 2002).  Indeed, the elements for contractual breach claims have "clearly be[en] characterized as "extra elements" that are not necessary for claims brought under the Copyright Act," particularly the element of promise inherent in such claims.  Scranton Times, 2009 U.S. Dist. LEXIS at *19; Operating Systems v. Wang, 2001 U.S. Dist.

LEXIS at *26.  As Judge Debevois noted in Operating Systems, "[a] copyright is a right against the world.  Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'" Id, at *26-*27.

This is also the case here – the crux of ABIM'S copyright infringement claim is Dr. Von Muller's copying of specific questions from the ABIM gastroenterology examination, whereas the basis for its breach of contract claim is Dr. Von Muller's broken promise to abide by the terms and conditions of the pledge of honesty which she signed prior to taking the examination.  While unquestionably similar, the claims are *not* identical.  We therefore discern no error in the submission of both claims to the jury.

    *2.  Defendant's Motion for a New Trial*

In addition to renewing her motion for the entry of judgment as a matter of law for the reasons outlined above, Defendant also raises some seven assignments of trial court error which, she claims, entitle her to post-trial relief.  We now address each of these claims, *seriatim.*

    *A.  Jury Confusion.*

Defendant Von Muller first moves for a new trial for the same reason advanced in support of her parallel Motion to Mold the Verdict: that the jury was purportedly confused by the

Court's instructions as to her affirmative defense of merger. According to Defendant, this confusion is evidenced by the jury's having answered "yes" to Question 5 of the Special Interrogatories and finding that she "copied elements of ABIM's examination that was not copyrightable under the doctrines of merger," but nevertheless awarding damages for copyright infringement.

Again, a new trial may be granted under Rule 59(d) "'when the verdict is contrary to the great weight of the evidence; that is, where a miscarriage of justice would result if the verdict were to stand,' or when the court believes the verdict results from jury confusion." Brown v. Nutrition Management Services, Co., 2010 U.S. App. LEXIS 5535 at *4-5 (3d Cir. March 17, 2010)(quoting Pryor v. C.O. 3 Slavic, 251 F.3d 448, 453 (3d Cir. 2001) and Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, 729 F.2d 1530, 1538 (5th Cir. 1984)); MFS, Inc. v. Dilazaro, 771 F. Supp. 2d 382, 464 (E.D. Pa. 2011). The key question is whether, "on the entire evidence," the court "is left with the definite and firm conviction that a mistake has been committed." Easley v. Cromartie, 532 U.S. 234, 242, 121 S. Ct. 1452, 1458, 149 L. Ed.2d 430 (2001)(quoting United States v. United States Gypsum Company, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)).

The merger doctrine has been described as a variation or application of the idea/expression dichotomy. "When the idea and

the expression of the idea coincide, then the expression will not be protected in order to prevent creation of a monopoly on the underlying 'art.'" Educational Testing Services v. Katzman, 793 F.2d 533, 539 (3d Cir. 1986)(quoting Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1253 (3d Cir. 1983)). Thus, "under the merger doctrine, 'if there are no or few other ways of expressing a particular idea,' the 'expression will be found to have merged into the idea.'" William A. Graham Co. v. Haughey, 430 F. Supp. 2d 458, 466 (E.D. Pa. 2006)(quoting Katzman, supra.)

In reviewing the record here, the following instruction on the affirmative defense of "merger" raised by Defendant was given to the jury:

> I mentioned to you earlier the affirmative defense.  The defendant has raised the affirmative defense of the merger doctrine.  I instruct you that an offer – strike that.
>
> I instruct you, members of the jury, that an author may copy the unprotected matter in any literary work, but may not copy the means of expression of that matter.  However, there is an exception to that prohibition that defendant asserts is applicable here.  This exception applies if there is only one way or only a few ways of expressing the ideals or other unprotected matters in a work.
>
> In those cases an author is permitted to copy the expressions in the work to the extent necessary to express that unprotected matter if otherwise it would be difficult if not impossible to express it.
>
> This doctrine is called the merger doctrine because when there is only one way of expressing unprotected matter, the expression is said to have merged with that matter.  The merger doctrine may apply to any sort of unprotected matter, such as ideal or in the case of factual works, facts or

events.  The doctrine may apply to literal text, such as
when factual content can be effectively expressed only by
using specific words or a limited range of words.

The merger doctrine may also apply to the non-literal
elements of a literary work such as when it is necessary to
recount factual events in the same order as another work, so
as to present historical facts accurately and intelligently.

The merger doctrine also applies to pictorial, graphic and
cultural works such as when there is a limited number of
ways to represent certain sorts of objects.

For example, a sculpture that depicts a German shepherd dog
will necessarily have certain similarities to other
sculptures of dogs of that breed.  It will have four legs, a
tail, two prominent ears standing upward and a long nose.

These necessary similarities among sculptures of German
shepherd dogs cannot under the merger doctrine be the basis
for a finding of infringement, because otherwise copyright
law would protect the ideal of a German shepherd dog.
That's the instructions on merger, the affirmative defense
of merger.

(N.T. 3/5/12, 147-149).

Subsequently, we further reviewed the verdict sheet with the

jury and charged:

Question Number 5: Do you find that Dr. Von Muller copied
elements of ABIM'S examination that was not copyrightable
under the doctrines of merger?  "Yes" with a blank line;
"no" with a blank line.

                              ...

Obviously, if you find that there was an affirmative defense
to this claim of copyright infringement, ABIM is not
entitled to any award of damages and the rest of these
questions have no bearing or no meaning as far as your
deliberations.  But if you find to the contrary then you
must proceed to these questions...

(N.T. 3/5/12, 152-153).

The jury did not follow these directions.  Indeed, despite

answering "yes" to question 5, it nevertheless proceeded to the remaining questions and thereafter awarded damages for willful copyright infringement in the amount of $82,446.  Given that the plaintiff was seeking damages in excess of $195,000 for the defendant's alleged copying of some fifty questions, however, it appears that the jury determined that Defendant copied only *some, but not all,* of the fifty questions and that it found that *some* of those questions contained unprotected matter such that Defendant's use of and transmission of that matter to Dr. Arora did not give rise to liability therefor.  Hence, despite the jury's disregard of the letter of the above instructions, it applied the merger principles in assessing liability against Dr. Von Muller and awarding damages to ABIM.  We therefore do not find any confusion on the part of the jury and the motion for new trial on this basis is denied.

   *B.  Denial of Motion to Preclude Dr. Katzka's Testimony*

   Next, Defendant asserts that a new trial is appropriate for the reason that the Court erred in denying her motion in limine to preclude Dr. David Katzka from testifying at trial on Plaintiff's behalf and erred in denying her request to *voir dire* him.  More particularly, Defendant contends that Dr. Katzka's testimony should have been precluded because he was an undisclosed expert witness who offered highly technical scientific testimony and who could not testify as a fact witness

because he did not have any personal knowledge about the facts of the case.

The record belies these assertions.  ABIM identified David Katzka as a potential witness on several occasions prior to trial in this matter: in its supplemental disclosures, in the Joint Pretrial Memorandum which it filed with Defendant in the Court on August 25, 2011, and in an email from its attorney, Hara Jacobs to prior defense counsel, Frank Mazzeo, on October 18, 2011. Each time it was made clear that the subject matter of Dr. Katzka's possible testimony was ABIM's creation of the questions appearing on its gastroenterology examination.

Although there is no question that Dr. Katzka is a well-respected, well-credentialed gastroenterologist who possesses a great deal of technical, medical knowledge, he was a fact witness who testified in his capacity as a volunteer member of ABIM's gastroenterology question writing committee and as the Secretary for that committee, a position which he held from 2004-2010. (N.T. 2/27/12, 9-11).  Dr. Katzka was the test committee Secretary for the fall of 2008 GI examination.  (N.T. 2/27/12, 12).  He described the make-up of the test committee, what the committee's goals are, how often it meets, what it does, how test questions are developed and how long it takes to develop and pre-test a test question and to otherwise get a question to the point where it is actually used in an examination. Dr. Katzka further

discussed that the test committee is also charged with reviewing and, where appropriate revising, existing questions to ensure that they are still viable, are up-to-date, and test on the current state of medical knowledge.  (N.T. 2/27/12, 13-24).  As the Secretary for the test committee, Dr. Katzka had first-hand knowledge of and was very familiar with most, if not all, of the questions on the 2008 gastroenterology examination as a result of his participation in this lengthy, vetting process.  (N.T. 2/27/12, 25-26).  As a consequence, he was able to recognize and address, *inter alia*, the teaching points of those fifty questions at issue (several of which he himself wrote), and to compare and discuss the similarities and differences between those fifty ABIM examination questions and those questions which Dr. Von Muller sent to Dr. Arora in September, 2009.  (N.T. 2/27/12, 31-62, 66-170).  To the extent that Dr. Katzka gave any opinion at all, it was limited entirely to commenting on the "overlap or duplicative content" between specific ABIM questions and the "questions document" that Dr. Von Muller transmitted to Dr. Arora.  Such testimony did not exceed the realm of his experience.  Based upon all of this evidence, we find that Dr. Katzka was disclosed long before trial as a potential fact witness and that he properly testified accordingly.  Defendant's motion for new trial on this basis is likewise denied.

24

C.  *Denial of Motion to Preclude Hearsay Evidence*

For her next assignment of error, Defendant asserts that by allowing Plaintiff to introduce various emails between she and Dr. Arora and permitting Plaintiff to question her regarding Dr. Arora's statements to her in those emails, the trial court allowed the introduction of impermissible hearsay testimony. Specifically, Defendant points to the following exchange at trial:

> (Pl's Counsel) Q: Dr. Von Muller, in this email, Dr. Arora tells you, "My collection for previous GI exams includes 41 pages of material containing over 150 actual questions and my answers with some references."  Isn't that what he says?
>
> (Defendant) A: That's what it says.
>
> Q: Okay.  So Dr. Arora described his GI material as actual questions from previous GI exams, didn't he?
>
> A: It says previous GI exams, not previous Board exams.
>
> Q: I understand that.
>
> A:  Okay.
>
> Q: My question to you is Dr. Arora described his GI material as actual questions from previous GI exams; correct?
>
> A: That's correct.
>
> Q: Okay.  So Dr. Arora goes on to tell you "The total cost is $480 plus your promise to send some questions soon after the exam."  That's what he says; right?
>
> A: That's what it says.
>
> Q: Okay.  So Dr. Arora tells you in this email he has over 150 actual questions from previous GI exams and that the cost is $480 plus your promise to send questions soon after the exam.  That's what he tells you?

A: That's what the email says.

Q: Okay.  And Dr. Von Muller, you agreed to purchase the questions from Dr. Arora; correct?

A: Yes.

(N.T. 2/23/12, 82-83).

Fed. R. Evid. 801(c)defines hearsay as:

"Hearsay" means a statement that:

> (1) the declarant does not make while testifying at the current trial or hearing; and

> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Thus an out-of-court statement that is *not* being offered for the truth of the matter asserted is not hearsay.  United States v. Herra, 600 F.2d 502, 504 (5th Cir. 1979).  "When a person's knowledge or state of mind is at issue, evidence that he has heard or read a statement may be relevant and it lies beyond reach of a hearsay objection."  Brown v. D.O.C. Pennsylvania, Civ. A. No. 05-347, 2007 U.S. Dist. LEXIS 49320 at *4 (W.D. Pa. July 9, 2007).  See also, Bowers v. City of Philadelphia, Civ. A. No. 06-3229, 2008 U.S. Dist. LEXIS 101563 at *17 (E.D. Pa. Dec. 12, 2008)("Plaintiff is not offering the consent decrees 'to prove the truth of the matter asserted.' Plaintiff instead seeks to offer the consent decrees to show that Defendants had knowledge of overcrowding and other conditions and that Defendants took steps to remedy those conditions.  The consent decrees are therefore not hearsay.")  Accordingly, "whether a

disputed statement is hearsay frequently turns on the purpose for which it is offered," and "... courts have a responsibility to assess independently whether the ostensible non-hearsay purpose is valid." United States v. Sallins, 993 F.2d 344, 346 (3d Cir. 1993).

In this case, the record reflects that the emails from Dr. Arora to Defendant were not offered to prove the truth of the matter asserted therein (*i.e.* that he had over 41 pages including 150 questions from actual GI exams), but to show Defendant's state of mind, i.e. that Defendant knew that what she was purchasing from Dr. Arora were actual questions that were going to be on her gastroenterology certification examination in November, 2008. As such, the emails do not constitute improper hearsay. Further, as Defendant herself utilized these same emails to illustrate, she and Dr. Arora had further discussed the possibility of teaming up to start a board review course together. (N.T. 2/24/12, 42-47; Exhibit P-19). We therefore discern no error in the admission of this evidence.

   *D.   Exclusion of Evidence of Plaintiff's Settlement with Arora Board Review*

Dr. Von Muller next assigns as error the trial court's denial of the motion which she filed on May 26, 2011 to compel information on the settlement which ABIM entered into with Dr. Arora. More particularly, Defendant contends that in denying this motion and in thereby preventing her from introducing

27

evidence of the amount Dr. Arora paid to Plaintiff at trial, Plaintiff was afforded a double recovery, which violates Pennsylvania law.

In advancing this argument, Defendant invokes Pennsylvania's so-called "one satisfaction" rule as articulated by the Pennsylvania Superior Court in Brandt v. Eagle, 412 Pa. Super. 171, 602 A.2d 1364 (1992). In that case, the Superior Court was charged with deciding "whether a plaintiff who has marked satisfied a judgment against one tort-feasor for less than the full amount of the judgment is barred from maintaining a second action against another tort-feasor for the same harm." Id., 602 A.2d at 1365. The plaintiff in that action had commenced two separate actions - first, against the driver of the vehicle which struck her car, thereby injuring her neck and back; and second, against the surgeon who purportedly negligently performed her cervical discectomy and spinal fusion surgery. At the trial of the action against the driver, Plaintiff presented evidence concerning her initial injuries as well as the pain and suffering following her operation and she was awarded a verdict in the amount of $148,251. Thereafter, Plaintiff settled with the defendant driver for a lesser amount, received the settlement proceeds and marked the docket as "satisfied." Dr. Eagle then moved for summary judgment in Plaintiff's action against him, arguing that the "unconditional satisfaction" of the judgment

against the driver barred the suit against him for the same harm.
Although the trial court initially denied the motion finding that
the plaintiff had not presented evidence of the full extent of
her injuries in her action against the defendant driver, on
reconsideration after review of the trial transcript, that court
reversed its prior decision and granted judgment in favor of the
doctor as a matter of law giving as the reason therefor that the
plaintiff "had in fact presented evidence of all of her injuries
arising from the accident *and* from both subsequent operations in
the Copp action."  Brandt, 602 A.2d at 1366.

  In affirming the trial court, the Superior Court examined,
*inter alia*, the decision of the Pennsylvania Supreme Court in
Hilbert v. Roth, 395 Pa. 270, 149 A.2d 648 (1959) and observed:

> The common law has traditionally attached great significance
> to the entry of a satisfaction of a judgment.  A plaintiff
> who is injured at the hands of more than one tort-feasor may
> sue and recover a judgment against any one or all of the
> tortfeasors and may attempt to collect the damages awarded
> by the judgment against any one or all of them.  However,
> although a plaintiff may obtain a judgment against several
> tort-feasors for the same harm, he or she is entitled to
> only one satisfaction for that harm. ...(citations omitted)
> The rationale underlying this rule is clear - the remedy
> provided to an injured person is to receive only one full
> compensation for the wrong done to him... Moreover, once the
> judgment is marked satisfied, the plaintiff is legally
> barred from further recovery against any of the tort-feasors
> because the law presumes that full satisfaction for the harm
> incurred has been received.

Id., at 1367.  The Brandt Court went still further and rejected
the plaintiff's assertion that the threshold inquiry is not
whether the plaintiff has marked the judgment satisfied but is

29

rather whether the full amount of the judgment was actually received by the plaintiff.  Instead, "in <u>Hilbert</u>, the Court expressly stated that where a plaintiff has satisfied a judgment entered after an adversary trial, the common law presumption that he is satisfied will operate."  <u>Brandt</u>, 602 A.2d at 1367-1368.

As noted by the Third Circuit, "<u>Brandt</u> belongs to a line of Pennsylvania cases standing for the proposition that where a plaintiff obtains a judgment and the 'judgment is marked satisfied..., Pennsylvania law presumes that full satisfaction for the harm incurred has been received.'"... "Courts have construed this conclusive presumption narrowly applying it only to cases where there has been a 'judgment entered as satisfied' on the docket."  <u>Greenleaf v. Garlock, Inc.</u>, 174 F.3d 352, 357, n.3 (3d Cir. 1999).  Accordingly, in cases where a judgment has not been adjudicated, "reliance upon this line of cases is misplaced."  <u>Id</u>.

In cases involving settlements, then, "[t]he party asserting 'one satisfaction' has the burden to provide the court with record evidence of the circumstances surrounding the settlement."  <u>Greenleaf</u>, 174 F.3d at 357.  This is because '[d]etermining whether a plaintiff has been fully satisfied through a settlement ... involves a highly factually sensitive analysis of 'the circumstances of the prior settlement to see whether the satisfaction represented the true value of the claim.'"  <u>Id</u>,

(quoting <u>Frank v. Volkswagenwerk, A.G. of W. Germany</u>, 522 F.2d 321, 326 (3d Cir. 1975) and <u>Blanchard v. Wilt</u>, 410 Pa. 356, 188 A.2d 722 (1963)).  Indeed, neither a consent verdict nor a settlement is the legal equivalent of a judgment entered in an action after an adversary proceeding and thus, entry and satisfaction of such will not preclude a subsequent action. <u>Sherman v. Franklin Regional Medical Center</u>, 443 Pa. Super. 112, 660 A.2d 1370, 1373-1374 (1995).  The crucial inquiry is therefore whether the settlement amount is the true value of the plaintiff's claim, but where there is an attempt to apportion the damages caused by one party from the injuries caused by another along with a specific exclusion from the terms of the releases with the original tortfeasors the suggestion arises that the settlement figure did not fully compensate Plaintiff.  <u>Id</u>, 660 A.2d at 1374.

In this case, we do not agree with Defendant's claim that Plaintiff was afforded a double recovery in violation of Pennsylvania's "one satisfaction" rule.  Indeed, the onus was on the defendant to offer evidence on the terms of the plaintiff's settlement with Dr. Arora in order that the settlement may be evaluated to determine whether or not the figure that was agreed to by the parties thereto fully compensated the plaintiff for the damages caused by Dr. Von Muller.  Defendant did not offer this evidence at trial.  Defendant is correct that we denied her

motion to compel discovery of this evidence in our Order of June
23, 2011 because Defendant did not move to compel these materials
until May 26, 2011 – the same day on which discovery finally
closed in this case.  It is particularly noteworthy that the
original Scheduling Order in this matter was issued on November
16, 2010 and afforded the parties until March 10, 2011 to
complete all discovery but that thereafter the deadlines were
further twice extended until April 10th and then finally to  May
26th, 2011.  In denying Defendant's motion to compel, we did not
foreclose her from offering this evidence at  trial, however.
Defendant was free to obtain this information through another
source or through another channel; we merely denied her very
belated request to compel the *plaintiff* to produce it.  So
saying, we cannot find that the denial of the motion to compel
equates with the grounds necessary to justify the grant of a new
trial in this matter and accordingly, Defendant's request for
same on this basis is also denied.

   *E.  The Court's Prejudicial Attitude Toward Defendant
        and her Counsel*

     For her next assignment of error, Defendant claims that this
Court treated the parties unequally and made several prejudicial
and disparaging comments about her and her attorneys in front of
the jury.  In support of this assignment, Defendant re-raises her
earlier argument about the Court's denial of her counsel's
request to *voir dire* Dr. Katzka and claims error in the Court's

granting of Plaintiff's counsel's request to *voir dire* her accountant, and takes exception to such scattered remarks by the Court to her attorneys to "move along," stating that an objection by defense counsel was "clearly overruled," and admonishing defense counsel that he was "wrong" and "made a mistake" by showing a document to the jury that had not yet been moved into evidence.  Defendant, however, cites no legal precedent to support these arguments.

It is well-settled that a new trial may be warranted when improper conduct by an attorney or the court unfairly influenced the verdict.  Marcavage v. Board of Trustees of Temple University, 400 F. Supp. 2d 801, 804 (E.D. Pa. 2005).  The moving party, however, "must meet a heavy burden to prevail on the ground of judicial misconduct."  Arlington Industries, Inc. v. Bridgeport Fittings, Inc., 692 F. Supp. 2d 487, 522 (M.D. Pa. 2010)(quoting 11 *Wright, Miller & Kane*, Federal Practice & Procedure, §2809 at 103-105).  "The court's comments 'may not confuse or mislead the jury, or become so one-sided as to assume an advocate's position.'" Id, (quoting American Home Assurance Co. v. Sunshine Supermarket, Inc., 753 F.2d 321, 327 (3d Cir. 1985)).  Indeed,

> "No person may be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him."  That assurance is absent - and judicial conduct improper - whenever a judge appears biased, even if she actually is not biased.

Qun Wang v. Attorney General of United States, 423 F.3d 260, 269
(3d Cir. 2005)(quoting Marshall v. Jerrico, Inc., 446 U.S. 238,
242, 100 S. Ct. 1610, 64 L. Ed.2d 182 (1980)).  The Third Circuit
"has developed a four-factor test to apply in determining whether
a trial judge has violated these precepts." Vitalis v. Sun
Constructors, Inc., No. 10-1698, 2012 U.S. App. LEXIS 10951 at
*13 (3d Cir. May 31, 2012).  Although "there is no bright-line
separating remarks that are appropriate from remarks that may
unduly influence a jury, ... th[e] analysis requires a balancing
of the following four factors: (1) the materiality of the
comment; (2) its emphatic or overbearing nature; (3) the efficacy
of any curative instruction; and (4) the prejudicial effect of
the comment in light of the jury instructions as a whole." Id,
at *14 (quoting United States v. Olgin, 745 F.2d 263, 268-269 (3d
Cir. (1984)); Berger v. Zeghibe, Nos. 10-4287, 11-1087, 2012 U.S.
App. LEXIS 3579 at *24 (3d Cir. Feb. 23, 2012).  Through it all,
the determination of whether to grant a new trial lies within the
sound discretion of the trial court. Marcavage, supra, (citing
Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1017 (3d
Cir. 1995)).

In application of the foregoing principles to the remarks
challenged here, we do not believe that our comments were such as
to unduly influence this jury or that they were "so one-sided as
to assume an advocate's position."  Rather, our remarks were

34

occasional, scattered throughout the record of a two-week trial and reflected at worst, some frustration with what appeared to be some inexperience on the part of defense counsel in trying cases. Our decision to permit defendant's accountant and damages expert to be *voir dired* is appropriate given the paucity of information provided as to the possible scope of her testimony and was in no way a reflection of bias in favor of Plaintiff or its case. Moreover, the *voir dire* took place out of the presence of the jury – the only thing the jury was told was that they would have an extra half hour for their luncheon recess.  (N.T. 3/1/12, 106-110).  We therefore discern no reversible error from this *voir dire.*  We also believe that we clearly stated valid reasons on the record justifying our decision to deny the request to *voir dire* Dr. Katzka and, given that the matter of Dr. Katzka's testimony has already been discussed at length previously in this opinion, we see no need to re-visit it here.  For all of these reasons, the request for new trial on the basis of bias and/or prejudice on the part of this Court is denied.

   *F.  Exclusion of Evidence of Payments from VIP Endoscopy*

   Next, Defendant argues that this Court improperly excluded damages evidence of the payments which were purportedly made by VIP Endoscopy, a business owned by Dr. Von Muller's husband, to Dr. Von Muller's medical practice.  As Defendant asserts, her medical practice regularly paid the salaries for the employees of

*both* VIP Endoscopy *and* the medical practice itself and she was evidently thereafter reimbursed for not only her own work but also for the work of other employees of VIP.  We sustained the objection to this line of questioning as it was irrelevant, noting that if Defendant's witness were able to parse out those sums attributable to Dr. Von Muller's work alone then it would be relevant and admissible as showing that Dr. Von Muller was precluded from performing gastroenterological procedures for and earning additional income from VIP because of ABIM's actions. (N.T. 3/1/12, 144-149).

Here, however, the testimony was to the contrary – the funds included the salaries of the nurses and the other people who did procedures at VIP and the witness did not know what portion of those salaries were directly attributable to Dr. Von Muller. (N.T. 3/1/12, 149-154).  However, as her counsel further inquired of Ms. Thompson, Dr. Von Muller herself would probably know what portion of those funds were directly attributable to her salary as opposed to anyone else's.  (N.T. 3/1/12, 153-154).  Thus, to the extent that there was any error in the Court's ruling on this point, as the record here makes clear, it could have been easily rectified by the Defendant herself.  (See, e.g., N.T. 3/1/12, 261-263; N.T. 3/2/12, 5-8)).  Accordingly, we again find no error worthy of the grant of a new trial.

*G. Grant of Plaintiff's Motion for Judgment as a Matter of Law of Defendant's Counterclaim for Tortious Interference*

Finally, Defendant again challenges the Court's decision to grant the motion of the plaintiff for the entry of judgment as a matter of law on her counterclaim for tortious interference with actual or prospective business relationships.

The elements for a claim of tortious interference under Pennsylvania law are as follows: (1) the existence of a contractual or prospective contractual relationship between Plaintiff and a third party; (2) purposeful action on the part of the defendant with the specific intent to harm the existing relationship or to prevent the prospective relationship from occurring; (3) the absence of a privilege or justification on the part of the defendant, (4) actual legal damages resulting therefrom.  Hopkins v. GNC Franchising, Inc., No. 06-3229, 2008 U.S. App. LEXIS 17766, 288 Fed. Appx. 871 (3d Cir. Aug. 19, 2008)(citing CGB Occupational Therapy, Inc. v. RHA Health Services, Inc., 357 F.3d 375, 384 (3d Cir. 2004) and Crivelli v. General Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000)); Brokerage Concepts, Inc. v. United States Healthcare, 140 F.3d 191, 529 (3d Cir. 1998).  Thus, as a threshold matter, a contract must be established, and for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the interference of the defendant.  Brokerage Concepts, supra; U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d

37

914, 925 (3d Cir. 1990)(both citing, *inter alia*, <u>Thompson Coal</u>
<u>Co. v. Pike Coal Co.</u>, 488 Pa. 198, 208, 412 A.2d 466 (1979).

In this case, however, while Defendant-Counterclaim
Plaintiff and her accountant testified that she closed her
practice ostensibly because of the suspension designation on
ABIM's website and the Wall Street Journal article, this decision
was Dr. Von Muller's and Dr. Von Muller's alone.  There was
absolutely no evidence whatsoever that any patient, prospective
patient, hospital or anyone else terminated any contract or
relationship or decided not to enter into a contract or other
business relationship with the defendant because of anything that
ABIM said or did.  As a result, we were compelled to grant the
Plaintiff-Counterclaim Defendant's motion to enter judgment as a
matter of law on the tortious interference claim(s) and we find
no basis on which to now reverse that decision.  So saying, the
motion for new trial on this ground is also denied.

## Conclusion

For all of the reasons set forth above, the Renewed Motion
of the Defendant, Counter-claim Plaintiff Sarah Von Muller for
Judgment as a Matter of Law or, in the alternative, for a New
Trial is DENIED pursuant to the attached Order.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
AMERICAN BOARD OF INTERNAL      : CIVIL ACTION
MEDICINE                        :
                                :
        vs.                     : NO. 10-CV-2680
                                :
SARAH VON MULLER, M.D.          :
                                :
        vs.                     :
                                :
AMERICAN BOARD OF INTERNAL      :
MEDICINE, CHRISTINE K. CASSEL,  :
M.D., LYNN O. LANGDON, M.D.,    :
and ERIC S. HOLMBOE, M.D.       :
```

**<u>ORDER</u>**

_____AND NOW, this      9th         day of July, 2012, upon
consideration of the Renewed Motion of Defendant, Counterclaim
Plaintiff Sarah Von Muller for Judgment as a Matter of Law and
Motion in the Alternative for a New Trial (Doc. No. 153) and the
Response of Plaintiff, Counterclaim Defendants in opposition
thereto, it is hereby ORDERED that the Defendant/Counterclaim
Plaintiff's Motion(s) are DENIED for the reasons set forth in the
preceding Memorandum Opinion.

BY THE COURT:

/s/ J. Curtis Joyner
J. CURTIS JOYNER,      C.J.

39